J-S69039-17

2017 PA Super 416

COMMONWEALTH OF PENNSYLVANIA

v.

BRITTANY NORA SMITH

Appellant

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
: No. 877 WDA 2017

Appeal from the Judgment of Sentence May 19, 2017
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001493-2016

BEFORE: BOWES, J., RANSOM, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    FILED DECEMBER 28, 2017

Appellant Brittany Nora Smith appeals from the judgment of sentence entered by the Court of Common Pleas of Mercer County after the trial court convicted Appellant of Driving Under the Influence of a Controlled Substance (DUI) and related vehicle code violations. Appellant argues that the trial court erred in refusing to suppress the evidence obtained from the seizure of her vehicle and the warrantless testing of her blood. We affirm.

The trial court aptly summarized the factual background of this case as follows:

[O]n August 6, 2016, at approximately 1:28 a.m., Trooper Sherry L. Hogue was traveling east on Route 62 in Mercer County. She was in a marked cruiser in full uniform. Trooper Hogue observed a white truck pull onto Route 62 traveling in a westwardly direction. When the truck pulled out onto Route 62 (which is a lined, two-way road), it traveled in the center of the roadway for a sufficient period of time forcing Trooper Hogue to apply her brakes as to avoid a collision. The truck returned to the westbound lane and Trooper Hogue turned her vehicle around and

_____

* Former Justice specially assigned to the Superior Court.

followed the truck. The truck turned right onto Springfield Church Road and then left into what appeared to be a business driveway. The trooper pulled behind the truck, activated her lights, and exited the vehicle.

The Trooper approached the driver, whom the Trooper identified as [Appellant], and asked [Appellant] to exit her vehicle. [Appellant] screamed at the Trooper and the Trooper detected an odor of alcohol coming from [Appellant] and observed [Appellant's] blood shot eyes. Trooper Hogue also observed a drink with a straw in the center console of [Appellant's] vehicle. Upon request, [Appellant] handed the drink to the Trooper who smelled the drink and detected the smell of alcoholic beverages. [Appellant] was uncooperative with the Trooper's instructions relative to field sobriety tests.

[Appellant] was then placed under arrest and transported to the Grove City Medical Center. During the trip to the Grove City Medical Center, [Appellant] told the Trooper that the Trooper should arrest criminals and not "drunks." The Trooper asked [Appellant] what if [Appellant] hit a car with a family in it and [Appellant] replied "we all have to die sometime."

Upon arrival at the Grove City Medical Center, Trooper Hogue read the new DL-26 form which did not contain any information regarding enhanced criminal penalties. [Appellant] signed the form because she did not want a license suspension. Blood was drawn and it was subsequently determined that [Appellant's] blood alcohol content was .274.

Trial Court Opinion (T.C.O.), 7/17/17, at 3-4.

Appellant was charged with DUI and several motor vehicle code violations.[1] On January 3, 2017, Appellant filed a suppression motion, alleging she was subjected to an unlawful stop of her vehicle and illegal warrantless

_____

[1] 75 Pa.C.S.A. §§ 3802(a)(1) (DUI – General impairment, Incapable of Safely Driving, second offense), 3802(c) (DUI – Highest Rate of Alcohol, BAC > 0.16%, second offense), 3301(a) (Driving on Right Side of Roadway), 3309(1) (Driving on Roadways Laned for Traffic), 3809 (Restriction on Alcoholic Beverages).

- 2 -

blood testing. After an evidentiary hearing, the trial court denied Appellant's suppression motion. On May 19, 2017, the trial court held a stipulated bench trial and convicted Appellant of the aforementioned offenses. The trial court imposed a sentence of ninety days to one year of imprisonment to be followed by four years' probation for the DUI conviction under Section 3802(c). No further penalty was imposed on the remaining charges. Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

1. The suppression court erred in refusing to declare the seizure of [Appellant] and her vehicle unlawful, as there was no probable cause for the traffic stop, as set more fully in [Appellant's] Omnibus Pre-Trial Motion, which is attached hereto and made a part hereof.

2. The suppression court erred in refusing to suppress evidence of the warrantless blood search conducted by the Pennsylvania State Police, as set forth in [Appellant's] Omnibus Pre-Trial Motion, which is attached hereto and made a part hereof.

1925(b) statement, 6/20/17, at 1 (reordered for ease of review).

In reviewing a challenge to the lower court's decision to deny a suppression motion, our standard of review is as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Commonwealth v. Woodard, 634 Pa. 162, 129 A.3d 480, 498 (2015). We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Commonwealth v. Galvin, 603 Pa. 625, 985 A.2d 783, 795 (2009). Where, as here,

- 3 -

the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Commonwealth v. Poplawski, 634 Pa. 517, 130 A.3d 697, 711 (2015). Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. In the Interest of L.J., 622 Pa. 126, 79 A.3d 1073, 1085 (2013).

Commonwealth v. Singleton, 169 A.3d 79, 82 (Pa.Super. 2017) (quoting

Commonwealth v. Yandamuri, ––– Pa. –––, 159 A.3d 503, 516 (2017)).

First, we review Appellant's claim that she was subjected to an unlawful traffic stop that was not justified by the requisite suspicion. Our Legislature has specifically defined in statute the requisite cause for a traffic stop at 75 Pa.C.S.A. § 6308(b), which provides:

> (b) Authority of police officer.-- Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

Further, this Court has clarified:

> "Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose." Commonwealth v. Feczko, 10 A.3d 1285, 1291 (Pa.Super. 2010) (en banc) (citation omitted). For a stop based on the observed violation of the vehicle code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. Feczko, 10 A.3d at 1291 ("Mere reasonable suspicion will not justify a vehicle stop when the

- 4 -

driver's detention cannot serve an investigatory purpose relevant to the suspected violation").

Commonwealth v. Bush, 166 A.3d 1278, 1282 (Pa.Super. 2017).

This Court has specifically discussed this distinction in the context of a suspected DUI violation:

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

Commonwealth v. Salter, 121 A.3d 987, 993 (Pa.Super. 2015). (emphasis added). Further, in order to further investigate a suspected DUI violation, an officer must conduct an investigatory stop, which "almost invariably leads to the most incriminating type of evidence, i.e., strong odor of alcohol, slurred speech, and blood shot eyes." Commonwealth v. Feczko, 10 A.3d 1285, 1289 (Pa.Super. 2010) (quoting Commonwealth v. Sands, 887 A.2d 261 (Pa.Super. 2005)). In Sands, this Court concluded that the police officer was justified in stopping the appellant's vehicle based on his reasonable suspicion

that appellant was drunk driving as the officer witnessed the appellant's vehicle drift across the fog line three times in the early morning hours.

In this case, the trial court found that Appellant made a "wide and dangerous turn" onto Route 62 and traveled a significant distance in the center of a lined, two-way road, forcing Trooper Hogue, who was approaching from the opposite direction, to apply her brakes to avoid a collision. T.C.O. at 5. The trial court found that Trooper Hogue credibly testified that she stopped Appellant's vehicle as she believed that Appellant was intoxicated based on her driving at that time of the early morning. Accordingly, we conclude that the trial court did not err in finding that Trooper Hogue had reasonable suspicion to stop Appellant's vehicle for suspicion of DUI.

Second, Appellant claims the trial court erred in denying her suppression motion in which she argued that Trooper Hogue was required to obtain a warrant to compel Appellant to submit to blood testing pursuant to the United States Supreme Court's decision in Birchfield v. North Dakota, ---U.S.---, 136 S.Ct. 1535 (2016). Moreover, Appellant asserted that the "warrantless seizure of her blood was without any legal exception and violated her rights under Article I, Section 8 of the Pennsylvania Constitution and the 4th Amendment of the United States Constitution." Omnibus Pre-trial Motion, 12/29/16, at 2.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. Commonwealth v. McAdoo, 46 A.3d 781, 784 (Pa.

Super. 2012). Blood tests constitute searches under the Fourth Amendment as they implicate privacy concerns. Birchfield, 136 S.Ct. at 2173. See also Commonwealth v. Ellis, 608 A.2d 1090, 1091 (Pa.Super. 1992) (providing that "the administration of a blood test is a search within the meaning of the Fourth Amendment if it is performed by an agent of the government").

"A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." Commonwealth v. Strickler, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000) (citations omitted). Those exceptions include voluntary consent. Id. "The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent." Id.

Although Appellant argued in the lower court that the results of her blood test should be suppressed as none of the exceptions to the warrant requirement applied, she does not contest the fact that she consented to submit to the blood test. Instead, Appellant baldly asserted that her constitutional rights were violated by the warrantless search and cited to Birchfield without providing any further explanation to the trial court. The trial court found Appellant's claim to be meritless as it found the holding in Birchfield inapplicable to this case.

In Birchfield, the High Court reviewed a consolidated case in which one of the petitioners, Steve Michael Beylund, was arrested for DUI and informed that the refusal to submit to blood testing constituted a crime itself under

North Dakota law.  Thereafter, petitioner Beylund argued that his consent had been coerced by the officer's warning.  Relevant to the instant case, the United States Supreme Court held that a state may not "insist upon an intrusive blood test, but also … impose criminal penalties upon the refusal to submit to such a test."  Birchfield, 136 S.Ct. at 2185.  Moreover, the High Court emphasized that "motorists cannot be deemed to have consented to a blood test upon pain of committing a criminal offense."  Id. at 2186.  As petitioner Beylund had consented to a blood test only after police had erroneously informed him that he could be criminally penalized if he refused to do so, the Birchfield Court remanded for the trial court to "reevaluate Beyland's consent given the partial inaccuracy of the officer's advisory."  Id.

Nevertheless, the Birchfield Court emphasized that its holding did not apply to the imposition of civil penalties and evidentiary consequences upon motorists suspected of DUI who refused blood testing upon their arrest:

> It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context.  Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.  Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

Birchfield, 136 S.Ct. at 2185 (emphasis added) (citations omitted).[2]

_____

[2] We observe that the Pennsylvania Commonwealth Court held that Birchfield does not affect the imposition of civil license suspension for refusal to submit

Thereafter, this Court decided Commonwealth v. Evans, 153 A.3d 323 (Pa.Super. 2016), in which the appellant had similarly argued that his consent to blood testing after his arrest for DUI was coerced as he only consented after the police warned him that his refusal to submit to blood testing would result in harsher penalties upon conviction. Although the Evans court recognized that Pennsylvania's implied consent law did not make refusal to submit to a blood test a crime, the panel emphasized that the law "undoubtedly impose[s] criminal penalties on the refusal to submit to a test." Evans, 153 A.3d at 331 (quoting Birchfield, 136 S.Ct. at 2185–86). This Court pointed out to the DUI penalty provisions set forth in 75 Pa.C.S.A. § 3804:

> Section 3804(c) provides that an "individual who violates section 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)—and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.A. § 3804(c). As such, Birchfield controls the case at bar.

Id.

Since the appellant in Evans had argued that he agreed to submit to blood testing only after being informed that harsher penalties would apply if he refused, this Court held that the officer's advisory to Evans was "partially inaccurate" as Birchfield prohibits states from imposing criminal penalties for the refusal to submit to blood testing. Evans, 153 A.3d at 331. As a result, this Court vacated the appellant's sentence and the suppression order and

_____

to a blood test. Boseman v. Commonwealth, Dep't of Transportation, Bureau of Driver Licensing, 157 A.3d 10, 21 (Pa.Cmwlth. 2017).

remanded with instructions for the trial court to reevaluate the voluntariness of appellant's consent in light of this inaccurate warning and the totality of the circumstances.

The instant case is factually distinguishable from Birchfield and Evans. To reiterate, the decision in Birchfield, which was controlling law at the time of Appellant's arrest, prohibited states from imposing criminal penalties upon an individual's refusal to submit to a warrantless blood test. Birchfield, 136 S.Ct. at 2185. The trial court in this case found Birchfield was inapplicable since Appellant was never advised that she would be subject to enhanced criminal sanctions upon refusal of blood testing. Our review of the record confirms this finding; both parties agree that Trooper Hogue only informed Appellant that her driver's license would be suspended if she refused blood testing. Appellant signed a DL-26 form acknowledging that she was advised of this particular consequence. This form does not contain any reference to enhanced criminal penalties. See Commonwealth's Exhibit 1, DL-26 form. Thereafter, Appellant agreed to submit to blood testing, which revealed a blood alcohol level of 0.274. We cannot conclude that the trial court erred in denying Appellant's suppression motion that vaguely cited to Birchfield.

On appeal, Appellant does not take issue with Trooper Hogue's warning before she consented to the warrantless blood test and concedes that neither Trooper Hogue nor the written form informed her that she would be subject to enhanced criminal penalties upon refusal of blood testing. Rather, Appellant raises the additional claim that her consent cannot be deemed

voluntary as, at the time of her arrest, the Pennsylvania DUI penalty provision allowing for enhanced penalties upon refusal of blood testing had not yet been amended by the Legislature to conform to the holding in Birchfield. Appellant argues that the "continued existence of the statutory penalty enhancement" vitiated the consensual search. Appellant's Brief, at 18. Appellant suggests that she should have been deemed "presumptively aware" of the enhanced criminal penalty provision as she had been previously convicted of DUI. Appellant's Brief at 18.

As Appellant did not present this argument to the lower court, but attempts to raise it for the first time on appeal, this argument is waived. See Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). As a result, we need not review this claim further.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judge Ransom joins the opinion.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/28/2017