J-S13025-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| v. : | |
| : | |
| : | |
| THOMAS V. GIBSON, ERIN C. : | |
| TORRES, ROBERT J. DINGER, JOHN : | |
| E. HARDISTY : | No. 1153 WDA 2017 |
| : | |
| Appellants : | |
| : | |

Appeal from the Order Entered May 19, 2017
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  No. 2284-2016,
No. 2319-2016, No. 2412-2016,
No. 2424-2016

BEFORE:  GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                          FILED  MAY 01, 2018

Appellants, Thomas V. Gibson, Erin C. Torres, Robert J. Dinger, and John E. Hardisty, appeal from the trial court's order denying their motions to suppress chemical test results.  We affirm.

Each of the Appellants was charged with various offenses related to driving under the influence of alcohol or controlled substance ("DUI").[1]  The trial court summarized the procedural history as follows:

Via Omnibus Pretrial Motions,[1] [Appellants] [sought] suppression of chemical test results obtained by way of warrantless, consented-to blood draws.  A consolidated suppression hearing was held at which time no testimony was

_____

[1]  75 Pa.C.S. § 3802.

presented. The only evidence submitted, a copy of the PennDOT DL-26B (6-16) form that was revised following the decision of the United States Supreme Court in Birchfield v. North Dakota, 136 S.Ct. 2160, 195 L. Ed. 2d 560 (U.S. 2016), was done so by [Appellants]. It was apparently the understanding of the parties that the issues presented were legal ones.

> [1] Each Omnibus Motion was filed by an attorney in the Office of the Public Defender. Assistant Public Defender Joseph Smith argued the motions on behalf of each [Appellant] in the above-captioned matters.

Trial Court Opinion, 5/19/17, at 1-2. The trial court denied Appellants' motions to suppress by order entered May 19, 2017.

On June 6, 2017, Appellants filed a consolidated petition for permission to appeal pursuant to Pa.R.A.P. 1311 (Interlocutory Appeals by Permission). This Court granted Appellants' petition, per curiam, by order filed August 9, 2017.[2] This consolidated appeal was assigned the current appeal docket number on the same date.

Appellants present the following issues for our review:

I. Whether the PENNDOT DL-26B (6-16) form is defective and illegal due to being non-compliant with Pennsylvania's implied consent law?

II. Whether the PENNDOT DL-26B (6-16) form is illegal because it violates the sep[a]ration of powers doctrine when the executive branch through PENNDOT unilateral[l]y modified the DL-26 form following the decision in Birchfield v. North Dakota, which has the direct effect of permitting law enforcement to continue warrantless blood draws for criminal prosecutions usurping and infringing upon the warrant requirement of the United States and Pennsylvania [C]onstitutions and established

_____

[2] That petition and this Court's order were filed at appeal docket number 62 WDM 2017.

court precedent, without any remedial action taken by the Pennsylvania legislature?

Appellants' Brief at 9 (unnecessary capitalization omitted).

In their first issue, Appellants argue that PennDOT's Implied Consent Form DL-26B (6-16) ("Form DL-26B") was defective and illegal at the time of their arrests because it was not compliant with the Implied Consent Law, 75 Pa.C.S. § 1547(b)(2)(ii), in effect at that time. Appellants' Brief at 15. Appellants maintain that the former Implied Consent Law was unconstitutional in light of Birchfield v. North Dakota, 136 S.Ct. 2160 (2016). Id. [3] Despite the unconstitutionality of the statute, Appellants assert that law enforcement was still using parts of the statute to obtain blood evidence through Form DL-26B. Id. Appellants contend that in each of their cases, law enforcement read to the Appellants the modified Form DL-26B to obtain blood evidence for a criminal prosecution. Id. at 20. Appellants assert that modified Form DL-26B specifically excludes the language codified in the former Implied Consent Law warning of criminal penalties if testing is refused and relieved law enforcement of their mandated duty to inform. Id. at 21-22. Appellants argue that simply deleting the language that warned of the criminal penalties from Form DL-26B was insufficient. Id. at 22. Appellants further assert that everyone is "conclusively presumed to know the law," therefore individuals

_____

[3] We note that 75 Pa.C.S. §1547 was subsequently revised to comply with Birchfield.

- 3 -

knew of the imposed criminal penalties for failure to consent to testing, but Form DL-26B failed to provide the warning for those criminal penalties. Id. at 22-23. Appellants allege that, instead of seeking warrants, law enforcement was '"skirting' or 'side-stepping' the mandated warrant requirement by utilizing a 'white-washed' DL-26B form issued by PennDOT which deleted the mandated duty to inform." Id. at 25. It is Appellants' position that modified Form DL-26B could not be recognized as valid, and was illegal at that time because it reflected only part of former Section 1547. Id.

In reviewing a challenge to the lower court's decision to deny a suppression motion, our standard of review is as follows:

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

Commonwealth v. Singleton, 169 A.3d 79, 82 (Pa. Super. 2017) (quoting Commonwealth v. Yandamuri, 159 A.3d 503, 516 (Pa. 2017)) (internal citations omitted).

In Birchfield, the United States Supreme Court held that a state may not "insist upon an intrusive blood test, but also … impose criminal penalties upon the refusal to submit to such a test." Birchfield, 136 S.Ct. at 2185.

- 4 -

Moreover, the Supreme Court emphasized that "motorists cannot be deemed to have consented to a blood test upon pain of committing a criminal offense." Id. at 2186. As the defendant in Birchfield consented to a blood test only after police had informed him that he could be penalized criminally if he refused to do so, the Birchfield Court remanded for the trial court to "reevaluate [defendant's] consent given the partial inaccuracy of the officer's advisory." Id. However, as this Court recently explained:

> Nevertheless, the Birchfield Court emphasized that its holding did not apply to the imposition of civil penalties and evidentiary consequences upon motorists suspected of DUI who refused blood testing upon their arrest:
>
> > It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context. Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> Birchfield, 136 S.Ct. at 2185 (emphasis added) (citations omitted).

Commonwealth v. Smith, 177 A.3d 915, 921 (Pa. Super. 2017).

Following Birchfield, this Court held that Pennsylvania's former implied consent scheme was unconstitutional insofar as it threatened to impose enhanced criminal penalties for the refusal to submit to a blood test. Commonwealth v. Olson, ___ A.3d ___, 2018 Pa. Super. 31, *3 (Pa. Super.

filed February 14, 2018). See also Commonwealth v. Ennels, 167 A.3d 716, 724 (Pa. Super. 2017), reargument denied (Sept. 19, 2017) (noting that "implied consent to a blood test cannot lawfully be based on the threat of such enhanced penalties"); Commonwealth v. Evans, 153 A.3d 323, 330–331 (Pa. Super. 2016) (finding that police officer's warning that the appellant could be subject to criminal penalties for refusing to consent to a blood draw was an incorrect statement of the law after Birchfield); Commonwealth v. Giron, 155 A.3d 635, 636 (Pa. Super. 2017) (vacating and remanding for resentencing after holding that "pursuant to [Birchfield] a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties provided in 75 Pa.C.S. §§ 3803–3804").

In this case, it is undisputed that officers read to each Appellant revised Form DL-26B. Review of the forms reflects that Appellants were properly advised that they would be subject only to the civil penalty of license suspension if they refused to submit to a blood test. Thus, the warning did not offend Birchfield. Indeed, this Court addressed a claim identical to Appellants' in Smith, and in it provided the following analysis:

> The instant case is factually distinguishable from Birchfield and Evans. To reiterate, the decision in Birchfield, which was controlling law at the time of Appellant's arrest, prohibited states from imposing criminal penalties upon an individual's refusal to submit to a warrantless blood test. Birchfield, 136 S.Ct. at 2185. The trial court in this case found Birchfield was inapplicable since [the appellant] was never advised that she would be subject to enhanced criminal sanctions upon refusal of blood testing. Our review of the record confirms this finding; both parties agree that [the trooper] only informed [the appellant] that her driver's

> license would be suspended if she refused blood testing. [The appellant] signed a DL–26 form acknowledging that she was advised of this particular consequence. This form does not contain any reference to enhanced criminal penalties. See Commonwealth's Exhibit 1, DL–26 form. Thereafter, [the appellant] agreed to submit to blood testing, which revealed a blood alcohol level of 0.274. We cannot conclude that the trial court erred in denying [the appellant's] suppression motion that vaguely cited to Birchfield.

Smith, 177 A.3d at 921-922 (footnote omitted). Accordingly, Form DL-26B read to Appellants in the instant matter properly reflected the state of the law, informing them that if they refused consent, they would be subject to only civil penalties.

Furthermore, we find Appellants' argument, that Appellants remained subject to enhanced criminal penalties if they refused the blood test because the Pennsylvania Legislature has not yet amended the statutory provisions, to be without merit. As noted, this Court has deemed Pennsylvania's former implied consent statute unconstitutional. Ennels, 167 A.3d at 724; Evans, 153 A.3d at 330-331. As such, this statute did not constitute a basis upon which an individual could be subjected to increased criminal penalties based upon their failure to consent to the blood test. Indeed, it is well established that when a statute is deemed unconstitutional, it is ineffective for any purpose. Commonwealth v. Muhammed, 992 A.2d 897, 903 (Pa. Super. 2010).

Here, revised Form DL–26B correctly reflected the law in accordance with Birchfield. Appellants were properly informed of the civil penalties to

which they would be subject, namely the suspension of their licenses, if they refused the blood draw and Appellants consented. Because the implied consent statutory scheme had been deemed unconstitutional, Appellants could not have been subject to criminal penalties on that basis. Thus, we cannot agree with Appellants' assertion that Form DL-26B was defective and illegal at that time because it was not compliant with the former Implied Consent Law.[4] Appellants' first claim fails.

In their next issue, Appellants argue that Form DL-26B is illegal as violative of the separation of powers doctrine. Appellants' Brief at 27. Appellants assert that the executive branch through PennDOT unilaterally modified the form following the Birchfield decision. Id. Appellants maintain that the executive branch's action of modifying the form, before the legislature had acted to correct the authorizing statutory language, "violates the separation of powers doctrine as the executive branch has usurped and infringed upon the legislative branch and judicial precedent." Id. at 28.

Our Supreme Court has discussed this fundamental doctrine of separation of powers as follows:

> A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government. The dividing lines among the

_____

[4] We further note that if the officers had warned Appellants of enhanced criminal penalties after Birchfield was handed down, such recitation would have constituted an incorrect statement of the law, thus rendering the DL-26B form defective and illegal as being non-compliant with current law. Evans, 153 A.3d at 330-331.

- 8 -

three branches "are sometimes indistinct and are probably incapable of any precise definition." Under the principle of separation of powers of government, however, no branch should exercise the functions exclusively committed to another branch.

The allocation of these governmental powers to three distinct branches averts the danger inherent in the concentration of absolute power in a single body:

> The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.

Pennsylvania State Ass'n of Jury Com'rs v. Commonwealth, 78 A.3d 1020, 1032 (Pa. 2013).

> The "legislative power" in its most pristine form is the power "to make, alter and repeal laws." It is axiomatic that the legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority. The legislature may, consistent with this constitutional axiom, delegate authority and discretion in connection with the execution and administration of a law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the enabling legislation.

> While the General Assembly may, with adequate standards and guidelines, constitutionally delegate the power and authority to execute or administer a law, the prohibition against delegation of "legislative power" requires that the basic policy choices be made by the General Assembly.

Id. at 1035-1036.

The executive branch "has the power to recommend legislation and the power and the duty to see that the laws are faithfully administered and carried out." Stander v. Kelly, 250 A.2d 474, 482 (Pa. 1969). "[T]he Courts have

the power, the duty and the responsibility of interpreting the Constitution and all legislation and determining whether legislation and presidential orders and all other questions and issues meet or violate the requirements of the Constitution." Id. "[I]t is the court's role to determine the constitutionality of a piece of legislation." Stilp v. Commonwealth, 905 A.2d 918, 951 (Pa. 2006). Moreover, this Court has explained that: "Ordinarily, the exercise of the judiciary's power to review the constitutionality of legislative action does not offend the principle of separation of powers." Hospital and Healthsystem Ass'n of Pa. v. Commonwealth, 77 A.3d 587, 596 (Pa. 2013) (quoting Sweeney v. Tucker, 375 A.2d 698, 705 (Pa. 1977)).

> Paramount to the separation of powers doctrine, and to the protection of the judicial branch as a coequal, distinct, and independent branch of government, is the "recognition that final judgments of the judicial branch are not to be interfered with by legislative fiat in this Commonwealth."

Friends of Pennsylvania Leadership Charter School v. Chester County Bd. of Assessment Appeals, 101 A.3d 66, 73 (Pa. 2014). As our Supreme Court explained:

> The legislature cannot, by an act of assembly, overrule a judicial decision: Greenough v. Greenough, 11 Pa. 489; it may not direct a statute to be construed in a certain way: In re East Grant Street, 121 Pa. 596, 16 A. 366; Titusville Iron–Works v. Keystone Oil Co., 122 Pa. 627, 15 A. 917; it cannot grant a new trial: Dechastellux v. Fairchild, 15 Pa. 18; or order an illegitimate child to be regarded as legitimate under terms of prior deed: Appeal of Edwards, 108 Pa. 283; it may not change the effect of judgments or decrees previously rendered: Pennsylvania Company, etc., v. Scott, 346 Pa. 13, 29 A.2d 328.

Id. at 74.

Here, the Legislature did not delegate its lawmaking authority, nor did the executive branch usurp the Legislature's lawmaking authority. Instead, the judiciary concluded that, in light of Birchfield, Pennsylvania's implied consent statutory scheme was unconstitutional, as was within its delegation of power. Evans, 153 A.3d at 330-331; Ennels, 167 A.3d at 724; Stander, 250 A.2d at 482. Accordingly, the executive branch, through PennDOT,[5] modified Form DL-26 in order to accurately reflect the state of the law. Thus, we cannot agree that there was a violation of the separation of powers doctrine. Appellants present no support for their argument, other than their general position that they "strongly argue and believe that the modification and issuance of the DL-26B forms without legislative action was done as a 'knee jerk' reaction to Birchfield." Appellants' Brief at 33.

Indeed, revision of Form DL-26 was properly undertaken in adherence to judicial precedent. As noted, post-Birchfield, enhanced criminal penalties for refusing a blood test requested under the Implied Consent Law are no longer constitutionally permissible and, thus, not a permissible consequence of such a refusal. Even though the General Assembly did not immediately amend Section 1547(b)(2)(ii) following Birchfield, the effect of Birchfield was to render the criminal penalties warned of in Section 1547(b)(2)(ii), as

_____

[5] PennDOT belongs to the executive branch. Smires v. O'Shell, 126 A.3d 383, 391 (Pa. Cmwlth. 2015). Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning. In re Brown, 30 A.3d 1200, 1204 n.2 (Pa. Super. 2011).

applied to blood testing, unenforceable. Therefore, PennDOT properly amended Form DL-26 to correctly reflect the status of the law. Accordingly, there was no violation of the separation of powers doctrine in PennDOT's amendment of Form DL-26. Appellants' final issue lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2018