J-A30018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY JOHN BRUNO, | : | |
| | : | |
| Appellant. | : | No. 1639 WDA 2017 |

Appeal from the Judgment of Sentence, June 5, 2017,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0011115-2016.

BEFORE: SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED JANUARY 31, 2019**

Anthony John Bruno appeals from the judgment of sentence, imposing incarceration of 11 months and 29 days to 23 months and 29 days in the Allegheny County Jail. This sentence followed a bench trial where the judge convicted Bruno of attempted robbery,[1] conspiracy to commit robbery,[2] carrying a firearm without a license,[3] and possessing instruments of a crime.[4] Bruno challenges only the denial of his suppression motion. We affirm.

The Commonwealth charged Bruno along with his two accomplices – Michael Allan Yots and Michael Thomas – and it consolidated their cases. Yots

---

[1] 18 Pa.C.S.A. § 901(a).

[2] 18 Pa.C.S.A. § 903.

[3] 18 Pa.C.S.A. § 6106(a)(1).

[4] 18 Pa.C.S.A. § 907(a).

---

\* Retired Senior Judge assigned to the Superior Court.

filed a motion to suppress the Commonwealth's evidence, which police had seized following a traffic stop. Primarily, Yots alleged officers had made that stop without reasonable suspicion. Bruno orally joined in the motion, which the suppression court denied that same day.

At the conclusion of the suppression hearing, the judge made the following findings of fact:

> The Court finds that . . . Officer Greg Bauman received information from a gentleman by the name of Regis Zlacki. The information [was] . . . that within the next five hours or so, an actual robbery and potential homicide was going to be committed against an individual by the name of Scott Hiwiller.
>
> Mr. Zlacki indicated that he does know Mr. Hiwiller, and he does know Mr. Hiwiller to be involved in, potentially, drugs, marijuana. He indicated that the motive of the robbery was for purposes of money – the Court could draw the inference – Mr. Hiwiller allegedly would have obtained by selling and distributing marijuana.
>
> He gave the police officers specific information with regard to the vehicle. He gave specific information with regard to the individual that he specifically worked with, and that individual was identified as Michael Yots, that they had worked together, he had known him, and Mr. Yots was the individual that first shared the information with Mr. Zlacki with regard to this planned robbery and potential homicide.
>
> Mr. Zlacki gave specific information that another individual by the name of Michael was involved. Although he did not know his last name, he described him as having . . . a Brett-Keisel-type beard,[5] and ultimately, that

_____

[5] Brett Keisel is a retired, professional football player from the National Football League. According to his Wikipedia page, Mr. Keisel "played 12 seasons for the Pittsburgh Steelers . . . ." WIKIPEDIA: THE FREE ENCYLCOPEDIA,

individual is [one of] the defendants in this case, a Mr. Michael Thomas.

[Mr. Zlacki] also indicated there was a third individual who was to participate in this. I believed he said he was of Italian descent, an Italian-looking individual and he may have known - - he said he knew the name as either Bruno or Dino or something to that effect, but an Italian name.

He gave them a specific description of the car that they would be in. He gave a specific description with regard to the items that would be in the car. That would include, but is not limited to, firearms, duct tape, various items that would be needed in order to both rob an individual, bind them, gag them and ultimately firearms for both threatening the individual, as well as killing the individual.

He gave the specific place that he was to meet them that evening. The Shop 'n Save parking lot in the Russellton area is the place where he was to meet them and engage in the criminal activity with them.

The officer, based on that information, believed that a felony was in the course of being committed, namely, both a robbery and potentially a homicide. Officer Bauman acted

---

"Brett Keisel," available at https://en.wikipedia.org/wiki/Brett_Keisel (last visited 1/10/19).

Prior to Super Bowl XLV, his beard looked like this:



*Id.*

upon that information with the intent to stop the vehicle and to prevent an ongoing felonious type act. He obtained other officers to be involved. He obtained the Pennsylvania State Police to be involved from the standpoint of the potential victim, Mr. Scott Hiwiller.

Ultimately, they located a red Jeep Liberty, not a black Jeep Liberty, but a newer model Jeep. When he stopped the vehicle, three individuals were in the car. He specifically described the individuals and where they were sitting in the car, and there was a driver that was Michael Thomas in the driver's side seat. He described the front passenger was Mr. Anthony Bruno, that the rear-seat passenger . . . behind the driver's side seat, rear seat as Michael Yots, the individual [Mr. Zlacki] knew and he worked with and were the individuals that he met along the way in the course of planning this alleged criminal activity.

The officers in clear view - - Officer Bauman testified he saw duct tape, one of the things that could be used in the commission of a crime on its own. It's not necessarily a criminal act, but if used in a manner as described by Mr. Zlacki then obviously [it] can be used for criminal purposes. He also saw a holster which he was told by Mr. Zlacki they would have guns of various type and weapons in the car.

Based on that, clearly, this Court finds that the officer, while there was no traffic violation, had more than a reasonable suspicion to stop that vehicle. This Court would hold that it probably went above reasonable suspicion and probably even rose to the level of probable cause for the purposes of stopping the vehicle.

Once the vehicle was stopped, based on the items that the officer viewed in plain view, he at that point proceeded with an investigative detention, which he is permitted to do. The purpose of the investigative detention is to do further inquiry and investigation.

N.T., 5/8/17, at 152-57.

After denying suppression, the court of common pleas proceeded to convict and sentence Bruno, as previously mentioned. It denied his post-sentence motions, and this timely appeal followed.

- 4 -

Bruno listed one issue in his appellate brief. He claims that we should reverse the denial of suppression, because "the police had neither a reasonable suspicion that criminal activity was afoot when they performed that warrantless vehicle stop, nor probable cause for a warrantless arrest." Bruno's Brief at 7. Essentially, Bruno challenges the reliability of Mr. Zlacki, who reported the impending robbery and murder of Mr. Hiwiller, to serve as an informant and give rise to reasonable suspicion to pull over Bruno and his accomplices on their way to rob and possibly to kill Mr. Hiwiller.

However, this argument flies in the face of our scope of review. Bruno has, for all intents and purposes, asked this Court to reweigh the credibility of one the Commonwealth's witness. This we may not do. ***See Commonwealth v. Smith***, 177 A.3d 915 (Pa. Super. 2017).

When reviewing the denial of a suppression motion, the appellate court may only determine if the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are correct. ***Id.*** at 918. We may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted, because the Commonwealth has won below. ***Id.*** Our review of suppression rulings includes only the suppression hearing record itself. ***See In re L.J.***, 79 A.3d 1073, 1085 (Pa. 2013).

The suppression court's legal conclusions are not binding on an appellate court; rather, our duty is to determine if the suppression court properly applied the law to the facts. ***Commonwealth v. Romero***, 183 A.3d 364, 377

(Pa. 2018) (internal citation and quotation marks omitted). Because the police did not obtain a warrant prior to taking the actions at bar, our standard of review is *de novo*. ***Id.***

Here, the suppression court has already conclusively determined that "Regis Zlacki credibly testified at the suppression hearing that a co-worker, Mike Yots, asked him to be part of a robbery." Trial Court Opinion, 5/23/18, at 3 (citing N.T., 5/8/17, at 10-11). After observing Mr. Zlacki in their police station or on the witness stand, both the officers and the suppression judge believed him. Accordingly, there is no basis for this Court to second guess their in-person impressions from the cold record. Bruno's claim that Mr. Zlacki could not be a reliable informant, creating reasonable suspicion and probable cause, fails at the appellate level.

Thus, as the learned Judge Philip A. Ignelzi explained in his 1925(a) Opinion:

> the reasonable suspicion standard is "less stringent" than the probable cause standard. ***Commonwealth v. Cook***, 735 A.2d 673, 676 (Pa. 1999). In order to demonstrate reasonable suspicion, the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience. ***Id.*** at 677.
>
> Likewise, probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. ***Commonwealth v. Rodrigez***, 666 A.2d 292, 295 (Pa. Super. 1995). The Superior Court also noted that, "[we] focus on the circumstances as seen through the eye of a trained police officer, taking into consideration that probable cause does not involve

certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act." ***Commonwealth v. Santiago***, 736 A.2d 624 (Pa. Super. 1999), citing ***Commonwealth v. Romero***, 673 A.2d 374, 376 (Pa. Super. 1996) . . .

In this case, the determination of whether reasonable suspicion and/or probable cause to arrest exists would be based upon the totality of the circumstances as known by Detective Bauman at the time the Defendant was taken into custody. This includes the information provided to Detective Bauman by Regis Zlacki and the other law enforcement officers he spoke to . . .

Using the totality of the circumstances test, Officer Bauman, had more than ample reasonable suspicion, as well as probable cause, to arrest Bruno. As such, the suppression court correctly found probable cause existed for the Defendant's arrest. The suppression court's ruling on this matter should be upheld.

Trial Court Opinion, 5/23/18, at 9-10.

We agree. Under the totality-of-the-circumstances test, the officers had reasonable suspicion to stop the Jeep Liberty and investigate whether its occupants were committing or about to commit felonies as the known informant had reported.

Moreover, we reject Bruno's proposition that the police did not follow the vehicle far enough to allow them to stop it, given Mr. Zlacki's detailed report to authorities. ***See*** Bruno's Brief at 15. Bruno's logic is flawed. There is no limit to his wait-and-see defense, unless the police withhold action until the Jeep Liberty has parked at the intended victim's residence. For no matter how far the officers might have followed it, there would always be a next,

theoretical turn where it could have hypothetically traveled away from Mr. Hiwiller's home.

In fact, even had the officers made this investigatory stop only one block short of the planned crime scene, Bruno still could have argued that the Jeep Liberty might have driven past the address and thereby negated all reasonable suspicion and probable cause. But officers need not wait until they witness a crime in process or have *prima facie* evidence of a crime to acquire reasonable suspicion or probable cause. ***See Rodriquez***, ***supra***. And they also need not allow felons to come within striking distance of their victims before taking investigative action. Thus, we conclude that the police did not need to wait-and-see which direction on State Route 28 the Jeep Liberty traveled before making this investigatory stop.

Therefore, the order denying Bruno's motion to suppress the evidence against him was appropriate, and his only issue on appeal fails.

Judgement of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2019