J-S02029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES THOMAS, :
:
Appellant. : No. 3199 EDA 2017

Appeal from the Judgment of Sentence August 30, 2017,
in the Court of Common Pleas of Delaware County,
Criminal Division at No(s): CP-23-CR-0000329-2017.

BEFORE: GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.: **FILED APRIL 11, 2019**

A Pennsylvania Board of Probation and Parole ("PBPP") agent searched

parolee James Thomas' home after he suspected Thomas had relapsed into

drug use and distribution, the crimes for which he was on parole. The agent

searched his bedroom and discovered heroin and cocaine in the dresser. The

court of common pleas upheld the search as constitutional; convicted Thomas

of possession with intent to deliver,[1] possession of a controlled substance,[2]

and possession of drug paraphernalia;[3] and sentenced him to 15 to 30 months

of incarceration, followed by four years' probation.

_____

[1] 35 Pa.C.S.A. § 780-133(a)(30).

[2] 35 Pa.C.S.A. § 780-113(a)(16).

[3] 35 Pa.C.S.A. § 780-113(a)(32).

In this timely appeal, Thomas raises one issue – whether the common pleas court "erred in failing to grant suppression of the controlled substances and paraphernalia . . . ." Thomas' Brief at 7. As we explain, no constitutional violation occurred, and we therefore affirm the judgment of sentence.

When reviewing the denial of a suppression motion, the appellate court may only determine if the record supports the trial court's factual findings and whether the legal conclusions drawn from those factual findings are correct. **Commonwealth v. Smith**, 177 A.3d 915, 918 (Pa. Super. 2017). Because the Commonwealth won below, our scope of review encompasses only the evidence of the Commonwealth and so much of Thomas' evidence as remains uncontradicted. **See id.** Also, it includes **only** the suppression hearing record itself. **See In re L.J.**, 79 A.3d 1073, 1085 (Pa. 2013). That said, because we are reviewing whether a warrantless search was constitutional, our standard of review is *de novo*. **See Commonwealth v. Romero**, 183 A.3d 364, 377 (Pa. 2018).

The only witness at the suppression hearing was the parole agent. **See** N.T., 4/20/17, at 2. The suppression court determined he "credibly testified." Trial Court Opinion, 8/2/18, at 16. His uncontradicted rendition of the facts is therefore conclusive.

The parole agent had five years' experience with the PBPP and two as a state correctional officer. His first interaction with Thomas occurred after the PBPP paroled Thomas, following a 2015 conviction on the charge of possession with intent to deliver. The agent had Thomas complete the PBPP's paperwork,

- 2 -

including a form authorizing PBPP agents to search his person, property, and residence without a warrant. *See id.* at 10.

About two to three weeks later, the agent stopped by Thomas' home for an unannounced visit and review. During that interview, Thomas admitted to making no efforts to complete drug and alcohol evaluations or to obtain employment. That information, combined with Thomas' prior record and his having been high at the time of arrest, made the agent suspect Thomas was violating his parole.

The agent then went to Thomas' bedroom and found the top dresser drawer slightly opened. He reached inside and found drugs.

Thomas does not specify whether he is challenging that search under the Fourth Amendment to the Constitution of the United States; Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania; or both. The common pleas court construed Thomas' argument relating to his "rights under the Fourth and Fourteenth Amendments." Trial Court's Opinion, 8/2/18, at 2. We will do the same.

The Fourth Amendment to the Constitution of the United States dictates:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amendment IV.  When applying the Fourth Amendment, we use the "totality-of-the-circumstances approach" to review state actions.  *Illinois v. Gates*, 462 U.S. 213, 231 (1983).[4]

A parolee, however, has limited Fourth Amendment rights due to his diminished expectation of privacy.  *See Griffin v. Wisconsin*, 483 U.S. 868, 873–74, (1987) (holding that state actors need no warrants or probable cause to search a probationer's home).[5]  The Commonwealth's police powers over parolees exceeds its authority over ordinary citizens, so it may administer parole as an intermediate step between prison and freedom.  *See id.* at 873–875.

Our General Assembly has codified the principles that have flowed from *Griffin* and subsequent cases applying it.  Under 61 Pa.C.S.A. § 6153, parole agents have warrantless search and seizure powers, provided their searches

---

[4] The rulings of the Supreme Court of the United States on federal questions bind this Court and every other court in the nation.  *See* The Constitution of the United States, Art. VI, Clause 2 (dictating that "*This* Constitution . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.") (emphasis added).  Pennsylvania courts are not at liberty to reject the High Court's pronouncements on the Fourth Amendment; we therefore must incorporate *Illinois v. Gates*, 462 U.S. 213 (1983), into our United States-constitutional jurisprudence.

[5] While *Griffin v. Wisconsin*, 483 U.S. 868 (1987), involved a probationer's Fourth Amendment rights, the decision's reasoning covers parolees, because their constitutional rights are indistinguishable from probationers.  *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 3, (1973); *see also United States v. Hill*, 967 F.2d 902 (3d Cir. 1992) (extending *Griffin* to warrantless search of a parolee's residence based on probable cause, even though no statutory or regulatory framework exists).

comport with constitutional requirements, and there is "reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision . . . ." 61 Pa.C.S.A. § 6153(d)(1)(i). This power extends to a parolee's "real or other property in the possession of or under the control of the offender . . . ." 61 Pa.C.S.A. § 6153(d)(2).

The statute lists some criteria that courts consider when determining whether an agent's suspicion was reasonable. They are:

(i)     The observations of agents.

(ii)    Information provided by others.

(iii)   The activities of the offender.

(iv)    Information provided by the offender.

(v)     The experience of agents with the offender.

(vi)    The experience of agents in similar circumstances.

(vii)   The prior criminal and supervisory history of the offender.

(viii)  The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6153(d)(6). As we will discuss, Thomas' parole agent had reasonable suspicion to search the dresser under at least three of these subsections – namely, (iv), (vii), and (viii).

First, Thomas told the agent that, after almost three weeks on parole, he had neither tried to find a job nor completed a drug and alcohol evaluation. *See* 61 Pa.C.S.A. § 6153(d)(6)(iv). By completing neither directive, Thomas gave the agent reasonable suspicion that he may have been using and perhaps

dealing drugs again. The agent explained, "I had given Mr. Thomas a direct link to an employer that more than likely would hire him, and when asked if he contacted that employer for a job, he stated, no . . . ." N.T., 4/20/17, at 16. The trial court, from this, inferred Thomas had displayed a "lack of motivation," a "commonly reported side-effect of marijuana use." Trial Court Opinion, 8/2/2018, at 18-19. A parole agent could have drawn such an inference from what Thomas said, and this agent, in fact, drew a similar one from Thomas' failure to undergo a drug evaluation.

Thomas believes such inferences were unreasonable in light of all the evidence of record. He argues that the suppression court made "a clear legal miscalculation, due in no small part to the fact that [he] had only been on parole for a very short period of time." Thomas' Brief at 17. Thomas asserts that "the limited period of supervision at issue certainly did not allow for [his] lack of employment or failure to have a drug assessment completed to become a meaningful or reasonable element to be considered as suspicions for criminal activity or a parole violation . . . ." *Id.* at 18.

We reject Thomas' assertion, because it does not suggest legal error. Instead, his argument challenges the factual inferences that one might draw from the parole agent's testimony. What constitutes a reasonable time to do substance testing or to secure work in Delaware County, Pennsylvania is a question of locality-specific facts for the suppression court.

As the Supreme Court of the United States has held, when applying the Fourth Amendment:

a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference . . . The background facts, though rarely the subject of explicit findings, inform the judge's assessment of the historical facts.

In a similar vein, our cases have recognized that a police officer may draw inferences based on his own experience in deciding whether [reasonable suspicion] exists. To a layman, [a] loose panel below [a] backseat armrest . . . may suggest only wear and tear, but to [a trained agent], who had searched roughly 2,000 cars for narcotics, it suggested that drugs may be secreted inside the panel. An appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable.

*Ornelas v. United States*, 517 U.S. 690, 699–700 (1996) (citation omitted).

Under *Ornelas*' deferential standard of review regarding fact findings and local inferences drawn therefrom, we must decline Thomas' invitation to supplant the agent's and the suppression court's reasonable inferences from the facts at bar with his or our own. We find no clear error in the inferences that the parole agent or the suppression court drew from Thomas' admissions, nor does he argue that such an error occurred.

Second, the agent knew Thomas' criminal history – specifically, Thomas was serving a drug-related sentence and had been arrested while using narcotics. *See* 61 Pa.C.S.A. § 6153(d)(6)(vii). The agent could accordingly

suspect, with a reasonable basis, that Thomas failed to get tested to conceal the fact that he had resumed his drug habit. It also stood to reason to suspect that Thomas, having pleaded guilty to drug trafficking in the past, had no urgency to find lawful employment, because he was again making money by selling drugs. Thus, the agent had grounds for reasonable suspicion under Section 6153(d)(6)(vii).

And third, the agent was in the middle of an unannounced, home visit specifically to learn if Thomas was in compliance with his conditions of parole. The agent's need to verify compliance increased upon learning that Thomas had not yet subjected himself to substance testing. The agent thus had grounds to conduct his search under 61 Pa.C.S.A. § 6153(d)(6)(viii), as well.

Based upon these facts, the agent had reasonable suspicion of a parole violation when he searched Thomas' bedroom dresser. The court of common pleas committed no legal error by allowing the Commonwealth to try Thomas using the drugs that search revealed as evidence of his crimes.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/19

- 8 -