J. S21034/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                         :          PENNSYLVANIA
          v.             :
                         :
BRIAN EDWIN WEAVER,         :       No. 1605 WDA 2017
                         :
          Appellant    :

Appeal from the Judgment of Sentence, October 4, 2017,
in the Court of Common Pleas of Mercer County
Criminal Division at No. CP-43-CR-0001954-2016

BEFORE:  OLSON, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED JUNE 12, 2018**

Brian Edwin Weaver appeals from the October 4, 2017 aggregate judgment of sentence of 90 days to 1 year of imprisonment, followed by 4 years' probation, imposed after he was found guilty in a bench trial of driving under the influence of alcohol or a controlled substance ("DUI"), DUI – highest rate of alcohol, driving on the right side of the roadway, and careless driving.[1]  After careful review, we affirm.

The trial court summarized the relevant facts of this case as follows:

> On September 12, 2016, Trooper Ronald E. Scott of Pennsylvania State Police - Mercer Barracks was in a stationary position in a marked patrol car near the Draw Bar in Otter Creek Township, Mercer County, Pennsylvania.  At approximately 1:30 a.m., Trooper Scott observed [appellant] leaving the Draw Bar, began to follow him and activated a

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 3301(a) and 3714(a), respectively.

> Mobile Video Recorder (MVR). Trooper Scott observed [appellant] weaving within his lane, crossing the centerline once, and the fog line twice. [Appellant] then turned on to a different road, and Trooper Scott observed [appellant] travel a substantial portion of the road while straddling the middle of the road or driving on the left hand side. Due to this, the Trooper pulled [appellant] over. [Appellant] was placed under arrest for a DUI and was read the revised DL-26 Form dated June 2016. [Appellant] was in handcuffs and not free to leave when he was asked to submit to the blood draw. [Appellant] consented to a blood draw at UPMC Hospital in Greenville, Pennsylvania, which yielded a result of .211.

Trial court Rule 1925(a) opinion, 12/29/17 at 1-2.[2]

Appellant was subsequently charged with DUI and related offenses. On April 26, 2017, appellant filed an **omnibus** pre-trial motion to suppress the evidence obtained from the traffic stop and warrantless blood test. (**See** "Omnibus Pre-Trial Motion," 4/26/17 at ¶¶ 4-10.) On June 7, 2017, the trial court conducted an evidentiary hearing on appellant's suppression motion. Following the hearing, the trial court entered an opinion and order denying appellant's suppression motion on June 19, 2017. Appellant waived his right to a jury trial and proceeded to a bench trial on July 11, 2017. Appellant was found guilty of the aforementioned offenses following a one-day bench trial.

---

[2] We note that neither the trial court's Rule 1925(a) opinion nor its opinion in support of the June 19, 2017 order denying appellant's suppression motion contain pagination; for the ease of our discussion, we have assigned each page a corresponding number.

As noted, on October 4, 2017, the trial court sentenced appellant to an aggregate term of 90 days to 1 year of imprisonment, followed by 4 years' probation. This timely appeal followed. Thereafter, appellant complied with the trial court's order directing him to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). On December 29, 2017, the trial court filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:

> [1.] Did the Commonwealth meet its burden of proof that [appellant], while under arrest, consented to the warrantless blood draw?
>
> [2.] Does the newly revised DL-26 Form correct the DUI statutory sentencing scheme to conform with *Birchfield*[3]?
>
> [3.] Was there probable cause to stop [appellant's] vehicle after leaving the bar parking lot and arrest him for [DUI] in his driveway?

Appellant's brief at 6. For the ease of our discussion, we have elected to address appellant's claims in a different order than presented in his appellate brief.

Appellant first argues that the trial court abused its discretion in denying his suppression motion because Trooper Scott lacked the requisite probable cause to stop his vehicle. (Appellant's brief at 16-18.) We disagree.

---

[3] *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016).

"The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code [("MVC")] is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." *Commonwealth v. Bush*, 166 A.3d 1278, 1281 (Pa.Super. 2017) (citation omitted), *appeal denied*, 176 A.3d 855 (Pa. 2017). "[A]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35-36 (Pa.Super. 2016) (citation omitted). This court has held that,

> [an appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016) (citation omitted; brackets in original).

The level of suspicion that a police officer must possess before initiating a traffic stop is codified in 75 Pa.C.S.A. § 6308(b), which provides as follows:

> **(b)** **Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

This court has long recognized that "mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*) (citation omitted), *appeal denied*, 25 A.3d 327 (Pa. 2011). Rather, police officers are required to possess probable cause to stop a vehicle based on observed violation of the MVC or otherwise non-investigable offense. *Id.*; *see also Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa.Super. 2017) (stating, "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." (citation omitted)).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.  The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a prima facie showing, of criminal activity.  In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (internal quotation marks and citations omitted).  Where an individual's vehicle is stopped for a suspected violation of Section 3301,[4] as is the case here, a police officer must possess probable cause because such a stop does not

---

[4] 75 Pa.C.S.A. § 3301, **Driving on right side of roadway**, provides in relevant part as follows:

> **(a)  General rule.--**Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:
>
> . . . .
>
> (2)  When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided the driver yields the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute a hazard.

***Id.*** § 3301(a).

serve any investigatory purpose. **See Commonwealth v. Enick**, 70 A.3d 843, 846 (Pa.Super. 2013), **appeal denied**, 85 A.3d 482 (Pa. 2014).

Instantly, the trial court found that Trooper Scott's testimony at the suppression hearing established that he possessed the requisite probable cause to stop appellant's vehicle for a suspected violation of Section 3301(a). (**See** trial court Rule 1925(a) opinion, 12/29/17 at 4.) Specifically, Trooper Scott testified that in the early morning hours of September 12, 2016, he was on stationary patrol when he observed appellant's vehicle pull out of the parking lot of the Draw Bar and begin to travel eastbound on State Route 358. (Notes of testimony, 6/17/17 at 4.) Trooper Scott testified that he began to follow appellant's vehicle and observed it cross the double yellow line once and the white fog line twice. (**Id.** at 5.) Trooper Scott further noted that after appellant's vehicle made a right turn on Hughey Road, he observed it straddle the middle of the roadway and/or drive completely on the left-hand side for approximately one-half mile. (**Id.**) Based on these observations, Trooper Scott initiated a traffic stop of appellant's vehicle. (**Id.** at 6.) The record further reflects that this incident was memorialized in a three-minute video taken from an MVR in Trooper Scott's patrol car, which was introduced into evidence at the suppression hearing and viewed by the trial court. (**See** notes of testimony, 6/7/17 at 6-7; trial court opinion and order, 6/19/17 at 3.)

Appellant contends that Trooper Scott lacked the requisite probable cause to stop his vehicle for a suspected violation of Section 3301(a) because the Commonwealth did not establish that Hughey Road was of "sufficient width." (Appellant's brief at 17.) In support of this contention, appellant cites ***Commonwealth v. Grover***, 42 Pa. D. & C.2d 767 (Quar. Sess. 1967), wherein the Court of Quarter Sessions of Chester County quashed an information charging the defendant with failing to drive on the right side of the roadway on the basis it failed to specify "that the road was of sufficient width or was a two-way street . . . ." ***Id.*** at 768.

Appellant's contention is without merit. Unlike in ***Grover***, the criminal information in the instant matter clearly states that, "[appellant] failed to drive his vehicle upon the right half of a roadway of sufficient width." (Information, 3/3/17 at count 2; certified record at no. 5.) Moreover, the testimony presented at the suppression hearing belies appellant's claim. Trooper Scott testified that although Hughey Road is essentially a narrow "country road" and not marked by lines, it is comprised of two-lanes with traffic traveling north and south. (Notes of testimony, 6/7/17 at 5-6, 11.) Additionally, appellant testified that he drives on Hughey Road "[a]t least daily" and acknowledged that he was driving on the left-hand side of the road rather than the right-hand side on the evening in question to avoid bumps and potholes. (***Id.*** at 15, 17.) Based on the foregoing, it is clear

that Hughey Road was of a "sufficient width" that appellant was required to drive his vehicle on the right-hand side, pursuant to Section 3301(a).

Appellant also argues that Trooper Scott lacked the requisite probable cause to stop his vehicle because "it [wa]s not improper for him to drive on or in the opposing lane of travel if such travel can be made in safety and is done to avoid obstructions in the roadway" like bumps and potholes. (Appellant's brief at 17-18; *see also* notes of testimony, 6/7/17 at 17.) Appellant's reliance on *Enick*, which he alleges stands for the proposition that a momentary traffic violation may be insufficient to establish probable cause for a traffic stop, to support his argument, is inapposite.

*Enick* involved a police officer who initiated a traffic stop of Enick's vehicle after observing her travelling with "half of the vehicle cross[ing] the double yellow lines into oncoming traffic for 2–3 seconds." *Enick*, 70 A.3d at 844. Enick filed a suppression motion arguing that the vehicle stop was unlawful, and the trial court denied her motion and convicted her of DUI. *Id.* at 845. On appeal, Enick argued that, "a single breach in the centerline—a momentary and minor deviation from the norm—is insufficient to create probable cause in support of the vehicle stop." *Id.* at 846 (internal quotation marks and citation omitted). In concluding that the police officer had probable cause to stop Enick for violating Section 3301(a) of the MVC, the *Enick* court held that "the record plainly indicates that Enick violated" that section. *Id.* at 847. The *Enick* court reasoned that:

> half of Enick's vehicle crossed over the double yellow centerline into an oncoming lane of traffic and remained there for three seconds. . . . Enick's driving plainly posed a safety hazard, with half of her vehicle protruding into an oncoming lane as [the officer's] vehicle approached from the opposite direction.

*Id.* at 848.

Similarly, like in **Enick**, appellant's violation of Section 3301(a) in the instant matter was not a momentary or minor violation. Rather, Trooper Scott observed appellant's vehicle traveling in both the center and/or on the left-hand side of Hughey Road for a distance of one-half mile, creating a clear safety hazard. Accordingly, we conclude the trial court properly determined that Trooper Scott possessed the requisite probable cause to stop appellant's vehicle for a violation of Section 3301(a). Based on the foregoing, the trial court did not err in denying appellant's **omnibus** pre-trial motion to suppress the evidence seized as a result of the traffic stop.

Having concluded Trooper Scott possessed probable cause to stop appellant's vehicle, we now turn to appellant's remaining claims of error. Specifically, appellant contends that the trial court abused its discretion in denying his motion to suppress the results of his blood test because the Commonwealth failed to "meet its burden of proof that [he], while under arrest, consented to the warrantless blood draw[.]" (Appellant's brief at 12.)

As noted, following appellant's arrest for DUI on the evening in question, Trooper Scott read appellant a revised DL-26 form concerning the chemical test of his blood. (Notes of testimony, 6/7/17 at 7-8.) The revised DL–26 form, "Chemical Testing Warnings and Report of Refusal to Submit to a Blood Test as Authorized Section 1547 . . . [,]" or DL-26B, is known as an implied consent form and informs the arrestee of the penalties to which they could be subjected if they refuse to consent to a blood draw following a DUI arrest. *See PennDot v. Weaver*, 912 A.2d 259, 261 (Pa. 2006). DL-26B includes the following language:

> It is my duty as a police officer to inform you of the following:
>
> You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> I'm requesting that you submit to a chemical test of blood.
>
> If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence you will be suspended for up to 18 months.
>
> You have no right to speak to an attorney or anyone else before you decide whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings, or if you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B form, 9/12/16 (numeration omitted); Commonwealth's Exhibit 2. Appellant signed the DL–26B and consented to the blood draw. (*Id.*)

- 11 -

Appellant maintains that his consent to the warrantless blood draw was invalid because the DL-26B read to him by Trooper Scott contravened the United States Supreme Court's decision in **Birchfield** and was misleading and deceitful. (Appellant's brief at 14-16.) For the following reasons, we disagree.

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." **Commonwealth v. Bostick**, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), **appeal denied**, 987 A.2d 158 (Pa. 2009).

> "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." **Commonwealth v. Strickler**, 757 A.2d 884, 888 (Pa. 2000). "Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception . . . , the stop and frisk exception, and the search incident to arrest exception." **Commonwealth v. Dunnavant**, 63 A.3d 1252, 1257 n.3 (Pa.Super. 2013).
>
> The "administration of a blood test . . . performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. **Commonwealth v. Kohl**, 615 A.2d 308, 315 (Pa. 1992); **Schmerber v. California**, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Since the blood test in the case at bar was performed without a warrant, the search is presumptively unreasonable "and therefore constitutionally impermissible, unless an established exception applies." **Strickler**, 757 A.2d at 888.

***Commonwealth v. Evans***, 153 A.3d 323, 327-328 (Pa.Super. 2016). "One such exception is consent, voluntarily given." ***Strickler***, 757 A.2d at 888-889 (citation omitted). Under the Fourth Amendment, where an encounter between law enforcement is lawful, voluntariness of consent to a search becomes the exclusive focus. ***See id.***

Here, our review of the record before us establishes that appellant voluntarily consented to the chemical test of his blood and that Trooper Scott's recitation of the DL-26B was not misrepresentative or deceitful nor did it impact appellant's consent in any way. In reaching this conclusion, we find our recent decision in ***Commonwealth v. Smith***, 177 A.3d 915 (Pa.Super. 2017), to be particularly instructive. Therein, a panel of this court discussed the admissibility of a blood test result when consent was obtained using the revised DL–26 form, post-***Birchfield***. As in the instant matter, appellant was stopped for suspicion of DUI, arrested, and consented to a blood test following the arresting trooper's recitation of the revised DL–26 form. ***Smith***, 177 A.3d at 917. The appellant sought to have the results of the blood draw suppressed, alleging that the warrantless seizure of her blood ran afoul of ***Birchfield*** and the Pennsylvania and United States Constitutions. ***Id.*** at 918.

On appeal, the appellant raised virtually identical claims to those raised by appellant in the instant matter, and the ***Smith*** court provided the following analysis in addressing those claims:

In **Birchfield**, the [United States Supreme] Court reviewed a consolidated case in which one of the petitioners, Steve Michael Beylund, was arrested for DUI and informed that the refusal to submit to blood testing constituted a crime itself under North Dakota law. Thereafter, petitioner Beylund argued that his consent had been coerced by the officer's warning. Relevant to the instant case, the United States Supreme Court held that a state may not "insist upon an intrusive blood test, but also . . . impose criminal penalties upon the refusal to submit to such a test." **Birchfield**, 136 S.Ct. at 2185. Moreover, the High Court emphasized that "motorists cannot be deemed to have consented to a blood test upon pain of committing a criminal offense." **Id.** at 2186. As petitioner Beylund had consented to a blood test only after police had erroneously informed him that he could be criminally penalized if he refused to do so, the **Birchfield** Court remanded for the trial court to "reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory." **Id.**

Nevertheless, the **Birchfield** Court emphasized that its holding did not apply to the imposition of civil penalties and evidentiary consequences upon motorists suspected of DUI who refused blood testing upon their arrest:

> It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context. Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose **civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.**

- 14 -

*Birchfield*, 136 S.Ct. at 2185 (emphasis added) (citations omitted).

Thereafter, this Court decided [*Evans*], in which the appellant had similarly argued that his consent to blood testing after his arrest for DUI was coerced as he only consented after the police warned him that his refusal to submit to blood testing would result in harsher penalties upon conviction. Although the *Evans* court recognized that Pennsylvania's implied consent law did not make refusal to submit to a blood test a crime, the panel emphasized that the law "undoubtedly impose[s] criminal penalties on the refusal to submit to a test." *Evans*, 153 A.3d at 331 (quoting *Birchfield*, 136 S.Ct. at 2185-[21]86). This Court pointed out to the DUI penalty provisions set forth in 75 Pa.C.S.A. § 3804:

> Section 3804(c) provides that an "individual who violates section 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)—and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.A. § 3804(c). As such, *Birchfield* controls the case at bar.

*Id.*

Since the appellant in *Evans* had argued that he agreed to submit to blood testing only after being informed that harsher penalties would apply if he refused, this Court held that the officer's advisory to Evans was "partially inaccurate" as *Birchfield* prohibits states from imposing criminal penalties for the refusal to submit to blood testing. *Evans*, 153 A.3d at 331. As a result, this Court vacated the appellant's sentence and the suppression order and remanded with instructions for the trial court to

- 15 -

> reevaluate the voluntariness of appellant's consent in light of this inaccurate warning and the totality of the circumstances.
>
> The instant case is factually distinguishable from **Birchfield** and **Evans**. To reiterate, the decision in **Birchfield**, which was controlling law at the time of Appellant's arrest, prohibited states from imposing criminal penalties upon an individual's refusal to submit to a warrantless blood test. **Birchfield**, 136 S.Ct. at 2185. The trial court in this case found **Birchfield** was inapplicable since Appellant was never advised that she would be subject to enhanced criminal sanctions upon refusal of blood testing. Our review of the record confirms this finding; both parties agree that Trooper Hogue only informed Appellant that her driver's license would be suspended if she refused blood testing. Appellant signed a DL–26 form acknowledging that she was advised of this particular consequence. This form does not contain any reference to enhanced criminal penalties. **See** Commonwealth's Exhibit 1, DL–26 form. Thereafter, Appellant agreed to submit to blood testing, which revealed a blood alcohol level of 0.274. We cannot conclude that the trial court erred in denying Appellant's suppression motion that vaguely cited to **Birchfield**.

**Commonwealth v. Smith**, 177 A.3d 915, 920-922 (Pa.Super. 2017) (internal citations and emphasis in original; some citations amended; footnote omitted); **see also Commonwealth v. Miller**, 2018 WL 2057002 (Pa.Super. 2018).

Upon review, we find that the rationale set forth in **Smith** is sound and compels a similar result in this case. Here, Trooper Scott read appellant the revised version of the DL-26 form, DL-26B, and properly informed him that he was subject to the civil penalty of license suspension if he refused to

consent. Appellant was not informed that he would be subject to additional imprisonment or any other sort of criminal enhancement.

Appellant would have this court conclude that his consent to the blood draw was based on "misrepresentation and deceit" and that the DL-26B was "tantamount to coercion." (Appellant's brief at 16.) According to appellant, because the General Assembly had not yet amended the statutory provisions that allowed for enhanced criminal penalties for failure to refuse a blood test at the time the DL-26B was read to him, and because he had been previously convicted of DUI and was aware of the enhanced criminal penalties, he "submitted to the warrantless blood test only on the pain of potentially enhanced criminal penalties." (*Id.*)[5] Appellant's claims are meritless.

As recognized by the trial court, the DL–26B utilized by Trooper Scott in this matter correctly reflected the law in accordance with *Birchfield* and its Pennsylvania progeny and was a correct statement of the law when read to appellant. (*See* trial court Rule 1925(a) opinion, 12/29/17 at 3-4.) Namely, the DL-26B did not warn appellant of any enhanced criminal

---

[5] We note that on July 20, 2017, the General Assembly amended 75 Pa.C.S.A. §§ 1547(b)(2)(ii) and 3804(c) of the MVC, consistent with *Birchfield* and its Pennsylvania progeny, to clarify that enhanced criminal penalties could be imposed only for refusing to submit to "chemical breath testing," not blood testing. *See* Act of July 20, 2017, P.L. 333. Concomitantly, since a driver is no longer subject to enhanced criminal penalties for refusing a blood test, the General Assembly removed from Section 1547(b)(2)(ii) the obligation of an officer to warn the driver about that consequence.

penalties for refusal to consent to a blood test because **Birchfield** declared such enhancement unconstitutional. **See Smith**, 177 A.3d at 921. Rather, as noted, the DL-26B properly informed appellant only of the civil penalties to which he would be subject, namely, the suspension of his license, if he refused the blood draw, and appellant freely consented. (**See** DL-26B form, 9/12/16; Commonwealth's Exhibit 2.) Contrary to appellant's argument, the fact that the DL-26B as read to him did not conform to Section 1547(b)(2)(ii) as it was then-written, is not fatal. The effect of **Birchfield** and its Pennsylvania progeny was to render the criminal penalties warned of in the prior version of Section 1547(b)(2)(ii) as applied to blood testing unenforceable and to sever that section from the rest of the MVC. **See** 1 Pa.C.S.A. § 1925 (stating, "the provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby . . . ."); **Commonwealth v. Batts**, 163 A.3d 410, 441 (Pa. 2017) (stating that "[i]f a provision of a statute is invalidated for any reason . . . , a court must sever it from the remaining, valid portion of the statute" (citation omitted)). Accordingly, we discern no abuse of discretion on the

part of the trial court in denying appellant's **omnibus** pre-trial motion to suppress the results of his blood test.[6]

For all the foregoing reasons, we affirm appellant's October 4, 2017 judgment of sentence.

Judgment of sentence affirmed.


Murray, J. joins this Memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/12/2018

---

[6] Appellant also argues, albeit parenthetically, that "his consent to the warrantless blood draw was invalid since [] he was under arrest and handcuffed at the time[.]" (Appellant's brief at 11.) As appellant did not raise this specific issue in his Rule 1925(b) statement, we deem this issue waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in [an appellant's 1925(b)] Statement . . . are waived"); **see also Commonwealth v. Dozier**, 99 A.3d 106, 110 (Pa.Super. 2014), **appeal denied**, 104 A.3d 523 (Pa. 2014) (deeming appellant's issues waived for failure to present them in his Rule 1925(b) statement).