J-S12018-18

2018 PA Super 133

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellant<br><br>v.<br><br>SHARON KAY JOHNSON | IN THE SUPERIOR COURT<br>OF<br>PENNSYLVANIA<br><br><br>No. 1198 MDA 2017 |

Appeal from the Order entered June 30, 2017,
in the Court of Common Pleas of Centre County,
Criminal Division, at No(s): CP-14-CR-0000526-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

OPINION BY KUNSELMAN, J.:                    **FILED MAY 21, 2018**

The Commonwealth appeals from the order granting Sharon Kay Johnson's motion to suppress the test results of a warrantless blood-draw. We reverse.

A summary of the facts, as stipulated to by the parties, is as follows.

On January 16, 2017, Officer Nicole Foley arrested Johnson with probable cause and requested a blood-draw.  Within the required two hour time period, Johnson was transported to Nittany Medical Center for a blood-draw. At the hospital, Officer Foley gave Johnson the revised DL-26 form; the form did not list enhanced criminal penalties as a consequence of failing to consent to a blood-draw.  Officer Foley read the DL-26 form to Johnson and gave her the opportunity to read it herself.  She did not tell Johnson that she would face greater criminal penalties if she refused consent to a blood-draw.

Johnson, signing the form, consented to the blood-draw. Officer Foley did not threaten or coerce Johnson.

Johnson testified that, at the time of her arrest, she sincerely but erroneously believed that refusing the blood-draw would subject her to greater criminal penalties. This misunderstanding came from Johnson's previous DUI arrest and attending DUI Safe Driving School.

Johnson filed a pretrial motion, seeking to suppress the warrantless blood-draw. She argued that: 1) a blood-draw given based upon the revised *O'Connell* warnings,[1] even without the clause regarding increased penalties, remained coercive and contrary to *Birchfield v. North Dakota,* 579 U.S. ___, 136 S.Ct. 2160 (2016), because 75 Pa.C.S.A. § 3804(c) still contained the increased penalty language as the law; and 2) Johnson's existing knowledge of the enhanced penalties under 75 Pa.C.S.A. § 3804 rendered her warrantless blood-draw coercive under *Birchfield*. The trial court granted Johnson's motion to suppress.

The Commonwealth appealed one issue:

> Whether the trial court erred in granting Johnson's motion to suppress, because Officer Foley did not tell Johnson that she would face harsher criminal penalties for refusing a blood test, making Johnson's consent voluntary.

---

[1] "*O'Connell* warnings" refer to the obligation of police officer to inform motorists, of whom the officer requests chemical testing, that the *Miranda* rights are inapplicable to such tests under the Pennsylvania Implied Consent Law. *See Commonwealth, Department of Transportation v. O'Connell*, 555 A.2d 873 (Pa. 1989). Critical to this case, the officer must also inform motorists of the legal consequences they will face if they refuse consent to the blood-draw.

*See* Commonwealth's Brief at 4.

Our standard of review for a suppression court's conclusions is *de novo*, because when police elect not to procure a warrant prior to searching, they forgo prior judicial authorization and so invite our highest degree of appellate scrutiny on review. *See Ornelas v. United States*, 517 U.S. 690 (1996). That said, we must "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 699.

In making these judgments, our scope of review is limited to only the evidence in the suppression hearing. *See Commonwealth v. Ennels*, 167 A.3d 716 (Pa. Super. 2017) (citations omitted). "In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole." *Ennels* at 718–19 (quotation marks and citations omitted). Despite our narrowed view of the record and the clearly erroneous standard we apply to the trial judge's findings of fact, we cannot sustain the order granting suppression of Johnson's blood-draw in this case.

The governing law in this area is well settled. The Fourth Amendment to the Constitution of the United States and Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania both prohibit unreasonable searches and seizures. "The administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the

United States and Pennsylvania Constitutions." ***Commonwealth v. Evans***, 153 A.3d 323, 328 (2016) (citations omitted).  If an officer performs a blood-draw search without a warrant, it is "unreasonable and therefore constitutionally impermissible, unless an established exception applies.  Exceptions to the warrant requirement include the consent exception.   For the consent exception to apply, the consent must be voluntary." ***Id.***

In granting Johnson's motion, the trial court concluded that Johnson did not voluntarily consent to the blood-draw, because Officer Foley did not inform Johnson that the enhanced criminal penalties of 75 Pa.C.S.A. § 3804(c) were unconstitutional.  The trial court reasoned as follows:

> The subject of the search must be **made aware** of his rights against a warrantless search for a waiver to be intelligent and for consent to be given.
>
> *     *     *     *
>
> At the time of [Johnson's] arrest on January 16, 2017, the [§ 3804(c)] criminal penalties were still a part of the [statute] regardless of their enforceability or redaction from the DL-26.  It was on January 31, 2017 [a couple of weeks after Johnson's arrest], when [***Commonwealth v. Giron***, 155 A.3d 635 (Pa. Super. 2017)], was decided that the Superior Court declared 3804(c) unconstitutional.
>
> [Johnson] is expected and assumed to know the law of this Commonwealth, including the criminal penalties if she refused the blood-draw.  ***See In re Kearney***, 7 A.2d 159, 161 (Pa. Super. 1939) (Ignorance of the law excuses no one, according to the ancient maxim, everyone being presumed to know the law).  [Johnson] was not made aware of her rights to refuse against a warrantless search, because she was not informed that the enhanced criminal penalties of 75 Pa.C.S. § 3804(c) would not be enforced.  A citizen, like [Johnson], with knowledge of the criminal penalties within the law would naturally expect them to be enforced

- 4 -

to the fullest extent possible. Silence by the arresting officer is not synonymous with communication of [Johnson's] rights, specifically that she would not face enhanced criminal penalties for refusal to consent to a search, without a warrant when the law says otherwise. Thus, the Court finds that [Johnson] did not intentionally relinquish a known right or privilege when consenting to a blood-draw as she was not informed that the enhanced criminal penalties of 75 Pa.C.S. §3804(c) were unconstitutional.

Trial Court Opinion, 6/30/17, at 4-5 (citations omitted). We disagree.

The issues in this case stem from the United States Supreme Court's decision in **Birchfield**. In that case, the defendant was arrested for DUI. In requesting a blood-draw without a warrant, the officer informed the defendant of North Dakota's implied consent advisory and that "test refusal in these circumstances is itself a crime." The defendant then agreed to the requested blood-draw. **Id.** at 2172. In defending his case, the defendant argued that "his consent to the blood test was coerced by the officer's warning that refusing to consent would itself be a crime." **Id.** The Supreme Court of the United States held that the Supreme Court of North Dakota erred in concluding that the defendant's consent was voluntary, as the state court's conclusion rested "on the erroneous assumption that the State could permissibly compel [ ] blood ... tests" by "impos[ing] criminal penalties on the refusal to submit to such a test." **Id.** at 2185-86.

The critical inquiry following **Birchfield** is whether the officer conveyed the threat of enhanced criminal penalties at the time of the arrest when seeking a warrantless blood-draw. Notably, the threat of civil penalties and evidentiary consequences is permissible under implied consent laws; however,

a threat of added criminal sanctions is not. Previously, we stated that, "*Birchfield* makes plain that the police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent; whether that enhanced criminal punishment is (or can be) ultimately imposed is irrelevant to the question of whether the consent was valid." *Commonwealth v. Ennels*, 167 A.3d 716, 724 (Pa. Super. 2017) (citations omitted).

Where the motorist does not face such a dilemma, we have previously held that consent is voluntary. *See Commonwealth v. Smith*, 177 A.3d 915 (Pa. Super. 2017).[2] In *Smith*, the defendant, who was arrested for DUI, and the officer used a DL-26 form containing no reference to enhanced penalties for refusing a blood-draw. Also, the officer only informed the defendant that his driver's license would be suspended, a civil penalty, if he refused. The defendant consented. The trial court denied suppression, because the defendant's consent was voluntary. *Birchfield* did not apply, because the arresting officer never told the defendant that he would be subjected to greater criminal penalties if he refused the blood-draw. On appeal, we affirmed.

*Smith* is similar to this case. Officer Foley never told Johnson that she would be subject to enhanced criminal penalties for refusing the blood-draw. Also, the DL-26 form that Officer Foley asked Johnson to sign accorded with *Birchfield*, because it did threaten additional criminal sanctions for refusal.

---

[2] This Court decided *Commonwealth v. Smith*, 177 A.3d 915 (Pa. Super. 2017) after the decision by the suppression court in this case.

The form, therefore, accurately reflected the law after *Birchfield*. Thus, the coercion by the police in *Birchfield*, which rendered the defendant's consent involuntary, did not exist here.

Moreover, it is not necessary that the police completely review changes in the law, from the time of a motorist's previous arrest or DUI-related schooling until the motorist's next traffic stop. Johnson's ignorance of the most recent Supreme Court decisional law did not impose upon Officer Foley an affirmative duty to provide her with an update on criminal procedure prior to requesting a blood-draw. Neither our state nor the federal constitution compels our police officers to serve as road-side law professors.

Given the foregoing, Johnson's personal failure to realize that the Supreme Court's issuance of *Birchfield* struck down § 3804(c)'s enhanced penalties is irrelevant. She apparently believed that our Commonwealth's enhanced penalties remained in full force and effect until a Pennsylvania appellate court declared them unconstitutional or the General Assembly amended them to comport with *Birchfield*. Her misconception – and the trial court's imposition of a duty upon the arresting officer to enlighten her as to the current state of the law – is predicated upon a fundamentally flawed view of our federalism.

The Constitution of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, Cl. 2. Thus, the Supreme Court of the United States'

constitutional pronouncements have immediate and national consequence. *Birchfield* became the "supreme Law of the Land," which Johnson and all other citizens of the United States were presumed to know on the day that the Supreme Court announced it – April 20, 2016. Thus, Johnson's ignorance of United States Constitutional Law cannot excuse her consent to Officer Foley's search. On the day *Birchfield* became law, Johnson should have known that § 3804(c)'s additional criminal sanctions were without force or effect of law, and so the law constructively imports that knowledge to her. Therefore, her ignorance of her constitutional rights was no excuse, and so her consent to the blood-draw was knowing and voluntary.

Hence, the trial court's extension of the maxim "ignorance of the law is no excuse" to Johnson's ignorance of recent Supreme Court case law was in error. Officer Foley had no obligation to enlighten Johnson as to the full details of federal constitutional law; Officer Foley only needed to tell Johnson the current, legal consequences of refusing to consent to the blood-draw. *See O'Connell, supra*. She did. Thus, Johnson's consent was voluntary.

Accordingly, the trial court improperly applied the constitutional law to the facts herein; thus, its conclusions were erroneous. *Ennels*, *supra*.

Order reversed.   Case remanded for further proceedings.   Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/2018