J-S14007-19

2019 PA Super 149

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALFRED LAMONT GEARY | : | No. 1393 EDA 2017 |

Appeal from the Order April 10, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011672-2016

BEFORE:   LAZARUS, J., NICHOLS, J., and PELLEGRINI*, J.

OPINION BY LAZARUS, J.:                     **FILED MAY 06, 2019**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting Alfred Lamont Geary's motion to suppress the results of his blood test.[1]  After careful review, we reverse and remand.

The Honorable Roxanne Covington summarized her findings of fact underlying the stop of Geary's vehicle, his arrest, and the subsequent blood draw at issue from his suppression hearing as follows:

> On October 22, 2016[,] at approximately 10:00 a.m., Police Officers [Gerard] Brennan and [his partner Officer] Young were on routine patrol [and] stopped at a red light on the 2200 block of Diamond Street.  [Geary's] car drove by at such a high rate of speed that it shook their car.  Officers Brennan and Young stopped the car approximately two blocks away.  [Geary] was the only

---

[1] The Commonwealth, pursuant to Pa.R.A.P. 311(d), has certified that the suppression order "terminates or substantially handicaps the prosecution." **See** Commonwealth's Notice of Appeal, at 1.

---

*   Retired Senior Judge assigned to the Superior Court.

occupant inside the vehicle, located in the driver's seat. When Officer Brennan requested [Geary's] driver's license, registration, and insurance, [Geary] laughed and did not comply. Officer Brennan testified that this happened at least twice[.] Officer Brennan noticed [Geary's] eyes were bloodshot and dilated. Officer Brennan inquired whether [Geary] was diabetic[2] and based on [Geary's] answers and actions, and Officer Brennan's four years of experience as a police officer[, Geary] was arrested for suspicion of DUI. Police Officer Brennan requested a blood draw and [Geary] was taken to the police station.

At the police station, Officer [Shawn] Hughes[,] who was assigned to the accident investigation district at the time[,] observed [Geary] with alcohol on his breath, glassy eyes, and slurred speech. [Geary] was read his **O'Connell** [w]arnings[3] and signed the warnings in the presence of other police officers, as well as Officer Hughes.

Pa.R.A.P. 1925(a) Opinion, 9/21/18, at 2 (citations to the record omitted).

At his suppression hearing on March 20, 2018, Geary challenged the voluntariness of his consent to give a blood sample for chemical testing under **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016).[4] N.T. Suppression

---

[2] Officer Brennan was attempting to discern if Geary's behavior could have been the result of something other than intoxication. **See** N.T. Suppression Hearing, 3/20/18, at 12–13.

[3] The **O'Connell** warnings, first announced in **Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873 (Pa. 1989), describe the duty of police officers to inform motorists they lack the right to speak with an attorney before deciding whether to consent to chemical testing and the legal consequences that follow from refusal to submit to such testing. **Commonwealth v. Evans**, 153 A.3d 323, 325 n.6 (Pa. Super. 2016).

[4] Though Geary also asserted he was stopped without reasonable suspicion and arrested without probable cause, the overwhelming majority of his argument concerned consent. N.T. Suppression Hearing, 3/20/18 at 6.

Hearing, 3/20/18, at 4–5. Specifically, Geary argued the consent form used was invalid because it stated that "his refusal could be used in subsequent legal proceedings.[5]" *Id.* (quoting Commonwealth Ex. 2, at 1). In support, Geary cited the Supreme Court's conclusion that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 49 (quoting *Birchfield*, *supra* at 2186).

_____

[5] The warnings and rights announced in the consent form read as follows:

1.  You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code, and I am requesting that you submit to a chemical test of your blood.

2.  You have the right to refuse to submit to a chemical test of your blood. If you refuse to submit to a chemical test of your blood, your operating privileges will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privileges will be suspended for 18 months.

3.  **Additionally, the fact that you refused to submit to a chemical test of your blood may be admitted into evidence in subsequent legal proceedings.**

4.  If you refuse a chemical test of your blood we may apply for a search warrant to seize a blood sample from you.

5.  You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

Commonwealth Ex. 2, at 1 (emphasis added).

Though the suppression court found Officer Brennan credible, the vehicle stop occasioned by reasonable suspicion, and Geary's arrest supported by probable cause, Judge Covington granted Geary's motion to suppress the results of his blood draw, finding the Philadelphia Police Department's blood testing consent form facially invalid under **Birchfield**. **See** Pa.R.A.P. 1925(a) Opinion, 9/21/18, at 2–3. The court agreed that the consent form violated **Birchfield** because of its "use of the phrase 'subsequent legal proceedings' [which neither informs] the driver [of] whether evidence of his refusal will be used in a civil or a criminal proceeding, nor does it provide accurate information concerning the status of the law." **Id.** at 4–5. Under the totality of the circumstances, the court held that Geary "believed he had no other choice but to sign" where he "was in a small area, surrounded by police, and given misleading instruction regarding his right to refuse [blood] testing." **Id.** at 5.

The Commonwealth filed a timely notice of appeal on April 25, 2017, and both the Commonwealth and the suppression court complied with Rule 1925.

The Commonwealth presents one issue for our review:

> Did the lower court err by concluding as a matter of law that the police coerced [Geary's] consent by informing him that the refusal to submit a blood test may be admitted into evidence in subsequent legal proceedings?

Brief of Appellant, at 3.

- 4 -

Our standard for reviewing the Commonwealth's appeal from a motion to suppress is well-settled.

> When reviewing the grant of a suppression motion, we must determine whether the record supports the [suppression] court's factual findings and whether the legal conclusions drawn from those facts are correct. We may only consider evidence presented at the suppression hearing. In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole. We may reverse only if the legal conclusions drawn from the facts are in error.

*Commonwealth v. Ennels*, 167 A.3d 716, 720 (Pa. Super. 2017) (quotations and citations omitted).

It is black letter law that a criminal defendant can only vaildly consent to a search or seizure when that consent is given voluntarily and knowingly, as contemplated by the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Smith*, 77 A.3d 562, 568–69 (Pa. 2013). In 2016, the United States Supreme Court refined the notion of consent in the context of intoxicated driving, concluding that "motorists cannot be deemed to have consented to submit a blood test on pain of committing a criminal offense." *Birchfield*, *supra* at 2186. Notably, the *Birchfield* court limited its holding to a prohibition against imposing additional *criminal* penalties for refusing a blood test, noting "prior opinions have referred approvingly to the general concept of implied-consent laws that impose *civil* penalties and *evidentiary* consequences on motorists

who refuse to reply. . . . [N]othing we say here should be read to cast doubt on them." ***Id.*** at 2185 (emphasis added).

This Court applied ***Birchfield*** to Pennsylvania law under circumstances where drivers suspected of DUI consented to a warrantless blood draw after being told that withholding consent would result in enhanced criminal penalties.[6] ***See Commonwealth v. Evans,*** 153 A.3d 323, 331 (Pa. Super. 2016). Our current scheme of civil and evidentiary penalties,[7] however, is not precluded by ***Birchfield***. ***See Commonwealth v. Johnson***, 188 A.3d 486, 490 (Pa. Super. 2018) ("[T]he threat of civil penalties and evidentiary consequences is permissible under implied consent laws; however, a threat of added criminal sanctions is not.").

_____

[6] In ***Evans***, the police officer informed the driver, "if you refuse to submit to a chemical test and you are convicted or plead to violating § 3802(a)(1)[,] related to impaired driving under the vehicle code, because of your refusal, you will be subject to more severe penalties set forth in § 3804(c)[,] relating to penalties the same as if you were . . . convicted at the highest rate of alcohol." ***Evans***, ***supra*** at 331.

[7] The relevant statutory consequences of refusing to submit to a blood test are as follows: (1) "[i]f any person placed under arrest for a violation of section 3802 [relating to driving under the influence] is requested to submit to chemical testing and refuses to do so . . . the department shall suspend the operating of privilege of the person" for a minimum of twelve months; and (2) "[i]n any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802[;] . . . the fact that the defendant refused to submit to chemical testing . . . may be introduced in evidence along with other testimony concerning the circumstances of the refusal." 75 Pa.C.S.A. §§ 1547(b)(1), (e).

In light of the foregoing, we find the suppression court erred by concluding that the Philadelphia Police Department's consent form was facially invalid. Though the language of the consent form threatens penalties for refusing consent, they are exclusively either civil or evidentiary in nature.[8] *See* Commonwealth Ex. 2, at 1. The suppression court conflated the impermissible practice of threatening additional *criminal* penalties to coerce consent with the permissible practice of informing motorists suspected of intoxicated driving of the *civil* and *evidentiary* consequences of refusing a blood test. *See Johnson*, *supra* at 490. The ostensibly offending language falls squarely within conduct permitted by *Birchfield* and sanctioned by this Court. *Robertson*, *supra* at 444. Whatever subjective misunderstandings Geary held as to the meaning of the civil and evidentiary penalties described in the consent form is of no import with respect to *Birchfield*. *See Commonwealth v. Johnson*, 188 A.3d 486, 491 (Pa. Super. 2018) (finding defendant's ignorance of constitutional law did not render consent involuntary).

Having found the consent form used by the Philadelphia Police Department facially valid, we now consider the totality of the circumstances

---

[8] The civil penalties, discussed in the second warning on the consent form, are limited to license suspensions. Commonwealth Ex. 2, at 1. The evidentiary penalty, discussed in the third warning on the consent form, is limited to potentially admitting the act of refusal in a subsequent legal proceeding. *Id.*

to determine whether Geary's consent to a blood draw was voluntary. In explicating voluntariness under similar circumstances, we have stated:

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

**Robertson**, **supra** at 447 (quotation omitted).

The first factor weighs against voluntariness, as Geary was under arrest. With respect to the second factor, Geary stated he did not feel as if he had a choice regarding whether or not to give a blood sample. N.T. Suppression Hearing, 3/20/18, at 26. The record, however, reveals that Geary was taken to the standard room[9] used by the accident investigation district for DUI issues, where he was read all five warnings on the consent form by a police officer.[10] **Id.** at 26, 45–47. Geary's complaint, therefore, boils down to discomfort with his arrest. Consequently, both the second factor, duress, and

---

[9] The room is a "10 x 10 [foot] square room" with "no windows . . . two desks, some seating, [and] a computer." N.T. Suppression Hearing, 3/20/18, at 26.

[10] At the suppression hearing, Geary admitted to having had all five warnings read to him by a police officer, but claimed to never have seen Officer Hughes before. N.T. Suppression Hearing, 3/20/18, at 45–47.

third factor, being informed of one's right to withhold consent,[11] weigh in favor of voluntariness. The fourth and fifth factors are neutral because there was no evidence presented regarding Geary's education and intelligence, or his belief that there was incriminating evidence in his blood. Finally, Geary cooperated with police. Accordingly, the sixth factor weighs in favor of voluntariness. In light of these factors, we find Geary's consent was voluntarily given. **See Robertson**, **supra** (finding "no reasonable fact-finder" could find consent involuntarily given when only factor weighing against voluntariness was custody of defendant). Accordingly, we reverse the trial court's suppression order and remand for further proceedings consistent with this decision.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/19

---

[11] In addition to informing Geary of his right to withhold consent, the suppression court suggests the existence of an additional duty to inform him of "the status of the law" and "the consequences of his refusal." Rule 1925(a) Opinion, 9/21/18, at 5. There is no such duty. It would be impossible for officers to apprise suspected drunk drivers of the exact status of the law, as "the fluid nature of searches and seizures render rules that require detailed warnings by law enforcement simply unfeasible." **Commonwealth v. Smith**, 77 A.3d 562, 571 (Pa. 2013).