J-S01041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES CLARK | : | |
| | : | |
| Appellant | : | No. 1044 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 27, 2023
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000658-2022

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: AUGUST 8, 2024**

Appellant, James Clark, appeals from the judgment of sentence imposed by the Court of Common Pleas of Adams County following his stipulated bench trial convictions for driving under the influence (DUI) of a controlled substance (DUI controlled substance) – first offense in violation of Sections 3802(d)(1)(i), (iii) and (2) of the Vehicle Code, driving under a suspended license, and driving a vehicle with illegal window tinting.[1]  For the reasons set forth below, we affirm.

On the afternoon of March 16, 2022, Appellant was driving a car owned by his fiancée, who was a passenger in the car, on York Road and Calvary

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(d)(1)(i), (iii) and (2), 75 Pa.C.S. § 1543(a), and 75 Pa.C.S. § 4107(b)(2), respectively.

Field Road in Straban Township, Adams County, Pennsylvania. Trial Court Rule 1925(a) Opinion, 8/23/23, at 1-2; Trial Court Motion to Suppress Opinion, 3/9/23, at 2-3. At approximately 1 p.m., a Pennsylvania State Police trooper observed that the window tint on the car that Appellant was driving was extremely dark and effectuated a traffic stop. Trial Court Rule 1925(a) Opinion, 8/23/23, at 2. At the beginning of the traffic stop, the trooper confirmed that the car's window tinting was illegal and learned that Appellant's driver's license was suspended. *Id.* The trooper also noticed signs that Appellant was impaired, asked Appellant to exit the car, and conducted field sobriety tests, which Appellant attempted to perform. *Id.* The trooper concluded, based on these tests and his observations of Appellant, that Appellant was under the influence of a controlled substance and could not safely operate a vehicle. *Id.* at 2-3. The trooper placed Appellant under arrest for DUI controlled substance, asked Appellant to consent to a blood draw, and obtained a search warrant for the blood draw when Appellant did not consent. *Id.* at 3. The blood draw was taken at approximately 4 p.m. and the test results showed the presence of both active marijuana compounds and marijuana metabolites. *Id.*

Appellant was charged with the above offenses and filed a motion to suppress the blood test results challenging the legality of the traffic stop, whether there was reasonable suspicion to conduct field sobriety tests, and whether there was voluntary consent to the blood draw. Motion to Suppress

- 2 -

at 2-3; N.T. Suppression Hearing at 3-4. The trial court held a hearing on the motion to suppress at which the trooper testified and the dash camera video from the trooper's vehicle was played and admitted in evidence. On March 9, 2023, the trial court denied Appellant's motion to suppress. Trial Court Order, 3/9/23.

Following the denial of Appellant's motion to suppress the blood test results, Appellant and the Commonwealth agreed to a bench trial on stipulated facts, and the trial court on June 27, 2023 found Appellant guilty of all charges. Stipulation, 6/27/23; Trial Court Order, 6/27/23, at 1. On the same date, the trial court sentenced Appellant to 72 hours to 6 months partial confinement and mandatory fines and fees for DUI controlled substances and imposed fines for the suspended license and window tinting violations. Trial Court Order, 6/27/23, at 2-5. This timely appeal followed.

Appellant argues in this appeal that the trial court erred in denying his motion to suppress the blood test results on the following three grounds: (1) that the traffic stop was illegal; (2) that the trooper lacked reasonable suspicion to conduct field sobriety tests; and (3) that Appellant did not give voluntary consent to the blood draw. Our standard of review on these issues is well established:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

- 3 -

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the trial court are subject to plenary review.

*Commonwealth v. Sloan*, 303 A.3d 155, 162-63 (Pa. Super. 2023) (quoting *Commonwealth v. Wright*, 224 A.3d 1104 (Pa. Super. 2019)) (ellipses in original).

Appellant's first issue is without merit. A law enforcement officer has authority to stop a motor vehicle where he has reasonable suspicion that the vehicle or driver is in violation of the Vehicle Code and further investigation is needed to determine that a violation has occurred or where he has probable cause to believe that the vehicle or driver is in violation of the Vehicle Code. 75 Pa.C.S. § 6308(b); *Commonwealth v. Salter*, 121 A.3d 987, 992-93 (Pa. Super. 2015).

Here, the evidence at the suppression hearing showed that the trooper had probable cause to believe that Appellant was in violation of the Vehicle Code. An officer has probable cause to believe that a driver is in violation of the Vehicle Code's prohibition on window tint, 75 Pa.C.S. § 4524(e)(1) and 75 Pa.C.S. § 4107(b)(2) (enforcing 67 Pa. Code § 175.67(d)(4)), and a traffic stop for that violation is constitutionally permissible where the officer observes

that the vehicle's windows are so darkly tinted that he cannot see inside it. *Commonwealth v. Prizzia*, 260 A.3d 263, 268-70 (Pa. Super. 2021); *Commonwealth v. Harris*, 176 A.3d 1009, 1013, 1019-20 (Pa. Super. 2017). The trooper testified at the suppression hearing that he could tell before stopping Appellant that the windows were darker than permitted by the Vehicle Code and that the windows were so dark that he could not see into the car through the windows, and the trial court found that testimony credible. N.T. Suppression Hearing at 5-6, 12-15; Trial Court Motion to Suppress Opinion, 3/9/23, at 1, 9. The trial court therefore did not err in holding that the traffic stop was legal.

In his second issue, Appellant argues that even if the traffic stop was legal, the field sobriety tests violated his constitutional rights because the trooper lacked reasonable suspicion that Appellant was driving under the influence. Additional detention of a driver beyond that required for the Vehicle Code violation on which the stop was based and minor inquiries incidental to the stop is constitutional only if the detention is supported by reasonable suspicion. *Sloan*, 303 A.3d at 163-64. Appellant is therefore correct that the trooper was required to have reasonable suspicion of DUI for the field sobriety tests to be constitutional.

Contrary to Appellant's assertions, however, the trial court found facts sufficient to show reasonable suspicion of DUI, and those findings are supported by the evidence at the suppression hearing.

> To establish grounds for "reasonable suspicion" ... the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity.
>
> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Sloan*, 303 A.3d at 164 (quoting *Commonwealth v. Smith*, 917 A.2d 848 (Pa. Super. 2007)) (brackets omitted, ellipses in original).

The trial court found that the trooper observed all of the following before conducting field sobriety tests: there was a slight odor of burnt marijuana in the car, Appellant's eyes appeared red, glassy, bloodshot, and watery, and Appellant appeared confused. Trial Court Motion to Suppress Opinion, 3/9/23, at 2-3, 10. Those findings are supported by the record. The trooper testified that he smelled a faint odor of burnt marijuana when he came to the car, that he saw that Appellant's eyes were bloodshot, watery, glassy, and red, that Appellant acted nervous and confused, and that before the stop, the car was pulled over on the shoulder and did a U-turn to go in the opposite direction. N.T. Suppression Hearing at 5-7, 21-22, 25-27, 29. The trooper also testified that bloodshot, watery, glassy eyes and confusion are indicative of marijuana intoxication and that based on these observations and the faint odor of

- 6 -

marijuana, he believed that Appellant was under the influence of a controlled substance. *Id.* at 6-7, 22, 25.

Those observations are sufficient to constitute reasonable suspicion of DUI to permit an officer to detain a driver for field sobriety tests, even where the Vehicle Code violation that precipitated the traffic stop did not show impaired driving. *Sloan*, 303 A.3d at 166 (odor of burnt marijuana and observation that driver's eyes were red, bloodshot, teary, and glassy and that driver showed confusion and slowed, slurred speech were sufficient reasonable suspicion of DUI to support detention for field sobriety tests even though reason for stop was speeding); *Commonwealth v. Dabney*, 274 A.3d 1283, 1285-86, 1292-93 (Pa. Super. 2022) (odor of raw marijuana and observation that driver's eyes were dilated and red were sufficient reasonable suspicion of DUI to support detention for field sobriety tests even though reason for stop was speeding); *Prizzia*, 260 A.3d at 271-72 (observations that defendant's eyes and speech showed signs of narcotics intoxication were sufficient reasonable suspicion of DUI to support detention for field sobriety tests even though reason for stop was tinted windows).

Appellant argues that reasonable suspicion of illegal activity could not exist because under *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), the odor of marijuana is insufficient to support a belief that the defendant is engaged in criminal activity in light of the Medical Marijuana Act, 35 P.S. §§

10231.101–10231.2110 (MMA) and because he had a medical marijuana patient card allowing him to legally use marijuana. We do not agree.

*Barr* holds that the odor of marijuana is insufficient by itself to support a belief that the defendant is engaged in criminal activity but permits consideration of the smell of marijuana with other factors in determining whether the totality of the circumstances is sufficient to infer criminal activity. 266 A.3d at 41-44; *Dabney*, 274 A.3d at 1292-93. Here, the trooper's reasonable suspicion was based not on marijuana odor alone but on that observation in combination with observations of Appellant's eyes and behavior that showed intoxication. N.T. Suppression Hearing at 5-7, 21-22, 25-27, 29. Moreover, *Barr* has no applicability here because the suspected crime on which the search in *Barr* was based was possession of marijuana and whether that activity was criminal was affected by the MMA. The crime as to which the trooper had reasonable suspicion in this case was DUI, not possession of marijuana. Neither the MMA nor a medical marijuana card permits a driver to drive under the influence of marijuana. 75 Pa.C.S. § 3810 ("The fact that a person charged with violating this chapter [prohibiting driving under the influence of alcohol or controlled substances] is or has been legally entitled to use alcohol or controlled substances is not a defense to a charge of violating this chapter"); *Dabney*, 274 A.3d at 1291-92.

Appellant also argues that the trooper decided to conduct field sobriety tests based on the fact that Appellant had a medical marijuana card and had

used marijuana a week earlier and that this information was allegedly improperly obtained. This argument also fails. Whether reasonable suspicion exists is an objective test, not a subjective test. **Commonwealth v. Watley**, 153 A.3d 1034, 1045 (Pa. Super. 2016); **Commonwealth v. Foglia**, 979 A.2d 357, 361 (Pa. Super. 2009) (*en banc*). As discussed above, the trooper's observations concerning marijuana odor, Appellant' eyes, and Appellant's confusion were sufficient to support objective reasonable suspicion that Appellant was driving under the influence. Whether the trooper's decision to conduct field sobriety tests was based on other reasons is therefore irrelevant. In addition, the trooper did not violate Appellant's rights in learning that Appellant had a medical marijuana card. Rather, Appellant volunteered his medical marijuana card when the trooper was attempting to verify an address to which the Vehicle Code violation citations could be sent in light of the discrepancy between the car's North Carolina license plate and the Pennsylvania identification card that Appellant had produced. N.T. Suppression Hearing at 20-21; Commonwealth Ex. 1.

Appellant's final issue likewise merits no relief. The taking of a blood sample at the direction of a police officer is a search subject to the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution and is constitutionally impermissible unless a warrant is obtained or an exception to the warrant requirement applies. **Birchfield v. North Dakota**, 579 U.S. 438, 455-56 (2016); **Commonwealth**

*v. Johnson*, 188 A.3d 486, 489 (Pa. Super. 2018). Voluntary consent to a search is an exception that can make a warrantless search constitutional. *Commonwealth v. Valdivia*, 195 A.3d 855, 861-62 (Pa. 2018); *Johnson*, 188 A.3d at 489.

Voluntary consent, however, is unnecessary where a valid warrant for the search has been obtained. *Commonwealth v. Palchanes*, 224 A.3d 58, 62-63 (Pa. Super. 2019); *Commonwealth v. Muniz*, 5 A.3d 345, 352 (Pa. Super. 2010). Here, the trooper obtained a warrant for the blood draw after Appellant refused to consent. Trial Court Motion to Suppress Opinion, 3/9/23, at 6-7, 13; N.T. Suppression Hearing at 9, 32. Appellant did not contend in the trial court that the warrant was invalid or raise any issue concerning the validity of the warrant in his concise statement of matters complained of on appeal. Defendant's Memorandum of Law in Support of Suppression Motion; Appellant's Concise Statement. Any claim that the search warrant was invalid is therefore waived. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"); Pa.R.A.P. 1925(b)(4)(vii).

For the foregoing reasons, we conclude that none of Appellant's issues merits relief. We accordingly affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/8/2024