J-A01018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GARY SMITH | : | |
| | : | |
| Appellant | : | No. 282 EDA 2024 |

Appeal from the Order Entered September 26, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0021218-2022

BEFORE: DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.: **FILED FEBRUARY 25, 2025**

Appellant, Gary Smith, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his petition for writ of *certiorari* after he was convicted of driving under the influence in the Philadelphia Municipal Court.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On December 5, 2022, at approximately 11:34 a.m., Officer Tina Willis observed Appellant's vehicle swerving in and out of traffic, almost hitting parked vehicles. Officer Willis also noticed Appellant's head slumped down, and that he seemed sleepy or "nodding off." Officer Willis followed Appellant for about a block and a half and pulled him over. While attempting to question Appellant, Officer Willis had to repeatedly wake him. Appellant's speech was

_____

[1] 75 Pa.C.S.A. § 3802.

slurred and he could not produce a driver's license when asked.  Officer Willis placed Appellant under arrest for suspicion of DUI because, in her opinion, he could not safely operate a motor vehicle.

Officer David Soto, Jr. met Appellant at the Police Detention Unit to conduct chemical testing around 1:30 p.m.  Officer Soto read Appellant the DL-26 form, verbatim, in a regular, conversational tone.  Appellant signed the form consenting to a blood draw, which a nurse performed in Officer Soto's presence.  Appellant fell asleep during the blood draw.  At the time, Officer Soto was not wearing his service weapon, and Appellant was not wearing handcuffs.  Although Appellant had constricted pupils and slow speech, he was able to answer Officer Soto's questions and did not seem to have difficulty understanding what was happening.  The parties stipulated that the blood report was positive for fentanyl, clonazepam, methadone, codeine, morphine, THC, and gabapentin.

On June 7, 2023, the parties appeared at Municipal Court for trial, at which time Appellant made a motion to suppress evidence of his blood draw, arguing that his consent to the DL-26 was not knowing and voluntary and that the DL-26 was unconstitutionally coercive.  The court issued findings of fact and conclusions of law, denied Appellant's suppression motion, and continued trial to August 30, 2023, at which time it found Appellant guilty of DUI (controlled substance).  On September 26, 2023, the court sentenced Appellant to 72 hours to 6 months of incarceration, followed by six months' probation.

On October 25, 2023, Appellant filed a petition for writ of *certiorari* to the Court of Common Pleas. On December 19, 2023, the court held a hearing on Appellant's petition and denied it that same day.

On January 11, 2024, Appellant timely filed a notice of appeal.[2] On February 29, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied on March 20, 2024.

On appeal, Appellant raises the following issues for our review:

> 1. Did the Commonwealth fail to establish that Appellant knowingly and voluntarily consented to his blood being drawn?
>
> 2. Were the warnings read to Appellant prior to his blood draw unduly coercive, rendering any consent involuntary?

(Appellant's Brief at 2).

Initially, we note that:

> When the Municipal Court (1) denies a motion to suppress, (2) finds the defendant guilty of a crime, and (3) imposes sentence, the defendant has the right either to request a trial *de novo* or to file a petition for a writ of *certiorari* in the Court of Common Pleas of Philadelphia County. Pa.R.Crim.P. 1006(1)(a). If the defendant files a *certiorari* petition challenging the denial of a suppression motion, the Court of Common Pleas of Philadelphia County sits as an appellate court and reviews the record of the suppression hearing in the Municipal Court. **Commonwealth v. Coleman**, 19 A.3d 1111, 1118-19 (Pa.Super. 2011); **Commonwealth v. Menezes**, 871 A.2d 204, 207 n.2

_____

[2] Appellant's notice of appeal incorrectly stated that the appeal was from the judgment of sentence, but this Court has corrected the docket to reflect that the appeal lies from the denial of the petition for writ of *certiorari*.

(Pa.Super. 2005). Importantly, when performing this appellate review, the Court of Common Pleas of Philadelphia County applies precisely the same standard that the Superior Court applies in appeals from [C]ommon [P]leas [C]ourt orders denying motions to suppress. Specifically,

> [the Court of Common Pleas] is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, [the Court of Common Pleas] may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the Court of Common Pleas is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the [C]ourt [of Common Pleas], whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the cour[t] below are subject to … plenary review.

> *Commonwealth v. Jones*, 605 Pa. 188, [197-98,] 988 A.2d 649, 654 (2010). The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. *In re L.J.*, 622 Pa. 126, [149,] 79 A.3d 1073, 1087 (2013).

*Commonwealth v. Neal*, 151 A.3d 1068, 1070-71 (Pa.Super. 2016).

This Court has recently explained:

> "[A] defendant is legally required to raise all claims in a writ of *certiorari* pertaining to the proceedings in the Municipal Court, or they will be considered waived on appeal." *Commonwealth v. Williams*, 125 A.3d 425, 431 (Pa.Super. 2015) (citation omitted). Further, when an appellant challenges a trial court's denial of a petition for

- 4 -

> writ of *certiorari*, "[w]e will not disturb the [trial] court's [decision] unless we find an abuse of discretion." ***Commonwealth v. Noss***, 162 A.3d 503, 507 (Pa.Super. 2017). When a writ of *certiorari* is denied, a defendant may raise evidentiary and sufficiency issues on appeal. ***See Coleman***, 13 A.3d at 1119.

***Commonwealth v. Hicks***, No. 2738 EDA 2023, 2024 WL 5232934 at *2 (Pa.Super. filed Dec. 27, 2024) (unpublished memorandum).[3]

Appellant first argues that the Commonwealth failed to establish that he knowingly and voluntarily consented to the blood draw. Appellant avers that the evidence established that he was too impaired to consent. Specifically, Appellant suggests that he was stuporous, semi-verbal, and unable to get out of the car without police assistance, and that his blood draw showed significant concentrations of six separate psychoactive substances. Appellant also contends that the officer who administered the DL-26 warnings could not explain how he concluded that Appellant understood the warnings and confirmed that Appellant fell asleep as his blood was being taken. Appellant suggests that at best, he was intermittently aware of his circumstances and was certainly incapable of meaningful consent. For these reasons, Appellant concludes that the court erred in denying his suppression motion. We disagree.

"The United States Supreme Court has held that because 'the taking of a blood sample' is a search within the meaning of the Fourth Amendment to the United States Constitution, police officers may not compel the taking of a

---

[3] We may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value. ***See*** Pa.R.A.P. 126(b).

blood sample without a search warrant, absent an applicable exception." ***Commonwealth v. Haines***, 168 A.3d 231, 234 (Pa.Super. 2017) (quoting ***Birchfield v. North Dakota***, 579 U.S. 438, 455, 136 S.Ct. 2160, 2173, 195 L.E.d2d 560 (2016) (footnote omitted)). "One such exception is consent, voluntarily given." ***Commonwealth v. Strickler***, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). ***See also Commonwealth v. Myers***, 640 Pa. 653, 681, 164 A.3d 1162, 1178 (2017) (plurality) (explaining that ***Birchfield***'s holding "supports the conclusion that ... an individual must give actual, voluntary consent at the time that testing is requested").

Section 1547 of the Vehicle Code provides that "any person who drives, operates or is in the actual physical control of a vehicle" in the Commonwealth is deemed to have "given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance" if a police officer has reasonable grounds to believe that said person has been driving while intoxicated. ***See*** 75 Pa.C.S.A. § 1547(a). This implied consent nevertheless implicates a right to refuse, that may be subject to civil penalties. ***See id.***

"[A] trial court must consider the totality of the circumstances when determining if a defendant's consent to a blood draw was voluntary." ***Commonwealth v. Miller***, 186 A.3d 448, 451 (Pa.Super. 2018), *appeal denied*, 650 Pa. 247, 199 A.3d 858 (2018).

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or

coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Robertson*, 186 A.3d 440, 444 (Pa.Super. 2018), *appeal denied*, 649 Pa. 179, 195 A.3d 852 (2018).

"[K]nowledge of the right to refuse to consent to the search is a factor to be taken into account, [but] the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1125 (Pa.Super. 2021) (quoting *Strickler, supra* at 79, 757 A.2d at 901). "Further, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account." *Id.* (internal citation, footnote, and quotation marks omitted). *See also Commonwealth v. Hill*, No. 1359 MDA 2018 (Pa.Super. filed Aug. 15, 2019) (unpublished memorandum) (rejecting argument that defendant was too intoxicated to provide consent to blood draw, because voluntary intoxication is not defense to criminal charge).

Instantly, the Court of Common Pleas denied Appellant's petition for writ of *certiorari*, reasoning:

> [Appellant] being in police custody at the time of the blood draw weighs against his voluntariness of consent for the first factor. However, simply being in custody is not sufficient to render consent to a blood draw involuntary.
>
> Regarding the second factor, there was no evidence of the

use of duress or coercive tactics by law enforcement personnel established on record. [Appellant] was not handcuffed and [Officer] Soto did not have his service weapon on him when he read the DL-26 warnings. [Officer] Soto testified that he read the DL-26 warnings in a regular conversation voice and read them verbatim and [Appellant] did not have any difficulty understanding the form.

Regarding the third **Robertson** factor, [Appellant] knew of his right to refuse to consent. [Officer] Soto read the DL-26 form to him which informs a defendant of his right to refuse consent. [Appellant] signed the form after being informed of his right to refuse consent.

Regarding the fourth **Robertson** factor, there is no evidence in the record regarding [Appellant's] education level or intelligence so this factor cannot be weighed in favor of [Appellant]. Regarding the fifth factor, no testimony was given regarding any sort of belief from [Appellant] that no incriminating evidence would be found which cannot be weighed in favor of [Appellant]. Neither the fourth nor the fifth factors weigh against the Commonwealth. Regarding the sixth factor, the record indicates that [Appellant] was cooperative with the police.

The only **Robertson** factor which weighs against the Commonwealth is the custodial status of [Appellant] which is not sufficient, on its own, to invalidate voluntary consent. The factors assessing voluntariness lead towards a finding that [Appellant] voluntarily consented to the blood draw when applying the **Robertson** factors.

(Trial Court Opinion, 3/11/24, at 7-8) (internal citations omitted).

Regarding Appellant's argument that he was too intoxicated to provide voluntary consent, the trial court observed:

[Appellant] provided no evidence that he was unconscious, medicated, or injured to the extent that he could not voluntarily consent to the blood draw. [Officer] Soto testified that he read the warnings to [Appellant] verbatim in a normal conversational voice. [Officer] Soto also testified that he gave [Appellant] the opportunity to read

- 8 -

the warnings and gave the chance to ask any questions [Appellant] may have had. [Appellant] did not have difficulty answering the questions. Ultimately, [Appellant] did not ask any questions about the warnings and he physically signed the DL-26B form consenting to the blood draw. [Officer] Soto testified that had [Appellant] refused to consent to the blood draw, it would not have been conducted.

(*See id.* at 10).

We agree with the trial court that Appellant's consent to the DL-26 form was voluntary. The record confirms that the circumstances of the administration of the warnings were not unduly coercive. Further, despite the fact that Appellant was "slow" and "sleepy," the record indicates that Appellant was not so intoxicated to render his consent involuntary. *See Robertson, supra*; *Hill, supra*.

In Appellant's second issue, he contends that even if he was capable of giving meaningful consent at the time of the blood draw, that consent would have been vitiated by the nature of the warnings themselves. According to Appellant, the DL-26 form, which threatens lengthy license suspensions and costly restoration fees, forces a defendant to choose between constitutionally protected interests. Appellant admits that prior panels of this Court have found that the DL-26 implicates civil rather than criminal penalties and are, therefore, not unduly coercive. However, Appellant suggests that these decisions are incompatible with a long history of United States Supreme Court precedent such that the court should have granted his suppression motion. We disagree.

As Appellant acknowledges, this Court has previously considered and rejected Appellant's argument, and we are bound by these decisions. ***See, e.g., Commonwealth v. Geary***, 209 A.3d 439, 443 (Pa.Super. 2019) (stating: "Though the language of the consent form threatens penalties for refusing consent, they are exclusively either civil or evidentiary in nature"; this does not run afoul of ***Birchfield, supra***); ***Commonwealth v. Ingram***, 926 A.2d 470, 476 (Pa.Super. 2007) (explaining Superior Court opinions are binding precedent which this Court must follow unless and until they are overruled by *en banc* Superior Court panel or by higher court). Accordingly, we discern no error or abuse of discretion and affirm the denial of Appellant's petition for writ of *certiorari*.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/25/2025

- 10 -